UNITED STATES of America, Appellee,

v.

**Dwayne C. LOWE, Appellant.**

**No. 93–1723.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1993.

Decided Nov. 3, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 9, 1993.

Murry A. Marks, St. Louis, MO, argued, for appellant.

John J. Ware, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Dwayne C. Lowe appeals from a judgment of the district court[1] entered upon a jury verdict finding him guilty of possession with the intent to distribute cocaine and cocaine base. We affirm.

At approximately 2:00 a.m. on January 22, 1992, Jennings, Missouri police officer Daniel Taylor saw Lowe, who was driving a Ford Bronco, turn from Shannon Avenue onto Maya Lane, a one-way street, the wrong way without signaling. Taylor activated his patrol lights. Lowe pulled to the side of the road and parked in a no-parking lane. After a computer check revealed that Lowe's license had been suspended, Taylor placed Lowe under arrest and issued tickets to him for failing to signal, driving the wrong way on a one-way street, and driving with a suspended license. Taylor then radioed his supervisor for permission to tow the Bronco. The supervisor granted permission. Before the vehicle was towed, Taylor and officer Rick Rapert searched the passenger compartment of the Bronco. Taylor found a gym bag under the passenger seat and, on looking inside, found cocaine and cocaine base. Rapert found a shoe box under the driver's seat and, on removing the top, found approximately $39,185.00 in cash.

The officers then took Lowe to the police station and contacted the Drug Enforcement Administration (DEA). Two DEA agents came to the station and advised Lowe of his *Miranda* rights. Lowe stated he understood his rights and gave a written statement. In the statement, Lowe explained that in exchange for $500.00 he had agreed to take the "goods" for a person named "Tim Dog" to an apartment near Maya Lane because Tim Dog's "set was hot" and "techts" were watching him.

Before trial, Lowe moved to suppress the drugs and the statement, alleging that they were the products of an unlawful arrest and search. At the suppression hearing, officer Taylor testified that it was the policy of the Jennings Police Department to make a custodial arrest of a person ticketed for driving with a suspended license and to impound the vehicle and inventory it before towing. He explained that to conduct an inventory he

---

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

had to look inside the gym bag so he could list the contents on an inventory tow sheet. The manager of an apartment complex on Maya Lane testified for Lowe. The manager stated that the street was private, but on cross-examination acknowledged that the complex had asked the Jennings police to patrol the street and that the police had done so. Lowe's brother, Michael, also testified. Michael stated that he had been arrested by the Jennings police three times for driving with a suspended license, but had never been taken into custody.

The magistrate judge recommended that Lowe's suppression motion be denied, concluding that the arrest and search were lawful. The district court adopted the recommendation.

At trial, in addition to the drugs and money, the government introduced Lowe's statement and presented expert testimony concerning illegal drug trade and the meaning of the terms in the statement. DEA agents explained that "goods" meant drugs, that "my set is hot" meant that the neighborhood was being watched by the police, and that "techts" meant detectives. Lowe testified that although he had agreed to take the gym bag and shoe box a couple of miles in exchange for $500.00, he did not know what they contained and "didn't think about what was in" them. Over Lowe's objection, the district court instructed the jury that it could find that Lowe knew that drugs and money were in the gym bag and shoe box if he "deliberately closed his eyes to what should have been obvious to him."

■ On appeal, Lowe first challenges the district court's denial of his suppression motion. He argues that the court erred in failing to grant the motion because his arrest was illegal. He reasons that because Maya Lane was a private street, under state law Taylor had no authority to stop him for turning the wrong way onto the street. We need not decide whether Taylor had authority under Missouri law to stop Lowe for turning the wrong way onto Maya Lane. Lowe does not dispute that Shannon Avenue is a public street[2] or that he violated the law

when he failed to signal the turn onto Maya Lane. This court has held that "[w]hen an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." *United States v. Cummins*, 920 F.2d 498, 500 (8th Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991).

Lowe argues that the fact he failed to signal is irrelevant because Taylor testified that the reason for the stop was because Lowe was driving the wrong way on Maya Lane. This argument is without merit. In *Cummins*, we held that an officer had a legitimate reason to stop a car because the driver made a turn without signaling, "even if the officer would have ignored the traffic violation but for his other suspicions." *Id.* at 501. We explained that the Supreme Court had left "little doubt that 'the officer's actual state of mind at the time of the challenged action was taken,' *Maryland v. Macon*, 472 U.S. 463, 470–71, 105 S.Ct. 2778, 2782–83, 86 L.Ed.2d 370 (1985), is of no significance in determining whether a violation of the Fourth Amendment has occurred." *Id.* (footnote omitted).

■ Lowe next argues that the search of his Bronco was an unlawful inventory search because the government failed to introduce the written policy of the Jennings Police Department. He relies on *United States v. Marshall*, 986 F.2d 1171 (8th Cir.1993). In *Marshall*, this court recognized that the Supreme Court has held that "inventory searches conducted according to standardized police procedures ... are reasonable." *Id.* at 1174 (citing *e.g., Colorado v. Bertine*, 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987) ("reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment"); *Florida v. Wells*, 495 U.S. 1, 4–5, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (unlawful search of locked suitcase in trunk of car because police "had no policy whatever with respect to the opening of closed containers encountered during an inventory search")). We, however, held that "the absence of standardized procedures ..., coupled with the substantial evidence of an

---

**2.** Indeed, in the district court Lowe conceded that Shannon Avenue is a public street.

investigatory motive on the part of the police, rendered the search of [a] minivan unreasonable under the Fourth Amendment." *Marshall*, 986 F.2d at 1175. We noted that the government had failed to "present any evidence that demonstrates the existence of standardized inventory procedures ... or that [the officers] followed them." *Id.* In particular, we noted that the searching officer "did not mention any standard procedures whatsoever" and "was unable to state even when inventory searches are to be conducted." *Id.*

We do not find *Marshall* dispositive of this case. First, there was no evidence of an investigative motive on the part of the police. Moreover, contrary to Lowe's suggestion, *Marshall* did not hold that the search was unreasonable because the government failed to produce a written policy; it only held that the search was unreasonable because the "the testimony of [the] [o]fficers ... d[id] not reveal any established procedures designed to inventory and remove valuables or dangerous items from the impounded vehicle." *Id.* Here, unlike *Marshall*, there was testimony that the department's policy was to inventory vehicles of persons taken into custodial arrest[3] and that the opening of the gym bag and shoe box was part of an inventory. We note that the Fifth Circuit has rejected an argument that the "prosecution must produce *written* police procedures in order to establish that the police department complied with its own regulations in conducting an inventory." *United States v. Skillern*, 947 F.2d 1268, 1275 (5th Cir.1991) (oral testimony regarding policy sufficient), *cert. denied* —— U.S. ——, 112 S.Ct. 1509, 117 L.Ed.2d 646 (1992)[4], and has upheld a search of a closed cardboard box in a car based on testimony that an officer opened a closed container because inventory "procedures required that he make a list of everything in an impounded car." *United States v. Gallo*, 927 F.2d 815, 819 (5th Cir.1991). *See also United States v. Kordosky*, 921 F.2d 722, 723–24 (7th Cir.) (although no written inventory policy, testimony regarding standard practice sufficient, including testimony that practice included "the opening of any locked or unlocked containers found within the vehicle in order to list their contents"), *cert. denied*, —— U.S. ——, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991). *Cf. United States v. Wilson*, 938 F.2d 785, 789 (7th Cir.1991) (although written policy providing for inventory of "contents" of impounded vehicles did not "use buzz words 'closed containers,'" court was "convinced that the term 'contents' provides sufficient elucidation to satisfy the requirements of *[Florida v.] Wells*"), *cert. denied*, —— U.S. ——, 112 S.Ct. 946, 117 L.Ed.2d 115 (1992).[5]

■ Lowe next argues that the district court abused its discretion in allowing DEA agents to testify about methods of operation in the drug community and the meaning of

---

**3.** At trial, Taylor and Rapert suggested that the reason the Bronco was towed was because it was illegally parked. Because at the suppression hearing Taylor testified that, pursuant to department policy, the Bronco was towed because Lowe was being taken into custody, we need not decide whether the officers could have towed and inventoried the Bronco solely because it was parked in a no-parking lane.

**4.** In the district court, Lowe argued that before towing the Bronco, the police were obligated to contact his brother, who was the owner, and give him the opportunity to take responsibility for the vehicle. We note that *"[Colorado v.] Bertine* explicitly rejected this argument." *Skillern*, 947 F.2d at 1275. The Court "held that the police had no obligation to offer ... such an opportunity, stating that, while such an offer 'would undoubtedly have been possible,' it was not required by the Fourth Amendment." *Id.* at 1275–

76 (quoting *Bertine*, 479 U.S. at 373, 107 S.Ct. at 742).

**5.** Surprisingly, the government does not characterize the search as a search incident to a custodial arrest. In *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (footnotes omitted), the Supreme Court held that when an officer "has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." The Court further held that "the police may also examine the contents of any containers found within the passenger compartment[,]" reasoning that "if the passenger compartment is within the reach of the arrestee, so will containers in it be within his reach." *Id.* (footnote omitted). Because the parties and the district court did not address the question whether the search could be upheld under *Belton*, neither do we.

the terms used in his statement. We disagree. "The district court has broad discretion to admit expert testimony." *United States v. Mabry*, 3 F.3d 244, 247 (8th Cir. 1993) (citation omitted). "It may allow law enforcement officers to testify as experts about drug-related activities unfamiliar to most jurors." *Id.* In particular, it may allow expert testimony regarding "jargon used in the drug trade." *United States v. Garcia*, 994 F.2d 1499, 1506 (10th Cir.1993). *See also United States v. Sparks*, 949 F.2d 1023, 1026 (8th Cir.1991) (court properly admitted expert testimony regarding gang behavior and meaning of gang graffiti and hand signs), *cert. denied*, — U.S. —, 112 S.Ct. 1987, 118 L.Ed.2d 584 (1992).

■ We also reject Lowe's argument that the district court erred in giving a deliberate-ignorance instruction. Such an instruction is appropriate when the defendant "asserts 'a lack of guilty knowledge,' but the evidence 'support[s] an inference of deliberate ignorance.'" *United States v. Long*, 977 F.2d 1264, 1271 (8th Cir.1992) (quoting *United States v. White*, 794 F.2d 367, 371 (8th Cir. 1986)). In this case, Lowe's testimony that he did not know or care to know what was in the gym bag and shoe box, despite the fact that he was to be paid $500.00 to take them a short distance, clearly supports an inference of deliberate ignorance. *See United States v. Bailey*, 955 F.2d 28, 29 (8th Cir.1992) (defendant's testimony that he thought package contained counterfeit money rather than drugs supported deliberate-ignorance instruction; "jury was entitled to believe that [Bailey] deliberately avoided informing himself about the contents, preferring instead the unreasonable claim that he thought it contained counterfeit bills").

Accordingly, the judgment is affirmed.