# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4108

_____

United States of America,  *

        Plaintiff - Appellee,  *

v.

Billy Ray Rowland,

        Defendant - Appellant.  *

   * Appeal from the United States
   * District Court for the
   * Southern District of Iowa.

_____

Submitted: May 13, 2003

Filed: September 3, 2003

_____

Before BOWMAN, HEANEY, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Billy Ray Rowland pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He did so after his motion to suppress was denied by the district court,[1] but in his plea agreement he reserved the right to appeal that denial. On appeal, he argues the firearm was discovered during an unlawful inventory search of his vehicle. We agree but still affirm the district court's denial

____

[1]The Honorable Ronald E. Longstaff, United States District Judge for the Southern District of Iowa.

because the search falls within another exception to the Fourth Amendment's warrant requirement.

I

On December 19, 2001, at approximately 11:30 a.m., the Story County Sheriff's Department received a report that a dark-colored, older-model Chevrolet was driving onto the shoulder of northbound Interstate 35 with sheets or papers flapping in the windows on both sides of the vehicle. The caller did not know whether there was a passenger in the vehicle and described the driver as a male in his 40's.

At 11:44 a.m., Story County Sheriff's Deputy Scott Madison observed a gray 1980's Oldsmobile driving northbound on Interstate 35. Deputy Madison observed the vehicle weaving back and forth in its lane, occasionally crossing the center line and once crossing the fog line. Sheets or papers were flapping in the window. Deputy Madison activated his cruiser's emergency lights. A passenger in the front passenger seat of the suspect vehicle sat up, and the driver pulled the vehicle to the shoulder and a stop.

Deputy Madison approached the vehicle and asked the driver to step out. The driver complied with his request, and identified herself as Cynthia Roger. Subsequently, she was positively identified as Christeena Janell Barker. She was unable to produce identification, however, and told Deputy Madison her purse had been stolen. When asked about a driver's license, the driver responded she had never obtained a driver's license.

Deputy Madison then approached the male passenger, who correctly identified himself as Billy Ray Rowland. When asked for identification, Rowland produced an Indian tribal identification card and his Social Security card but not a driver's license. Deputy Madison requested his dispatcher run a records check on both individuals.

-2-

Deputy Madison was subsequently informed the computer search did not locate a valid driver's license for either individual and, in fact, revealed Rowland's driver's license had been suspended by the State of California. The dispatcher also informed Deputy Madison an arrest warrant was outstanding for Rowland in Oklahoma.

A records search of the vehicle's license plate number revealed title to the vehicle was in the name of Roger Cook who, after repeated attempts by the dispatcher, could not be reached. Rowland told the Deputy he was in the process of buying the vehicle from the titleholder but could not produce any documentation to support this assertion.

Because Deputy Madison and the other officers who soon joined him at the scene suspected Rowland's possession of the vehicle was unlawful, the decision was made to impound the vehicle, and law enforcement immediately began a road-side inventory search. During their initial search of the vehicle, officers found a syringe in the glove compartment and rolling papers and razor blades elsewhere in the passenger compartment. In the trunk a small wooden box was also discovered, which Deputy Madison testified during the suppression hearing was consistent with drug use. Because the vehicle was full of a variety of items including trash, and because of the amount of freeway traffic, the vehicle was towed to an impound-garage where a subsequent, more thorough search was conducted. Officers then discovered, among other things, a loaded .38 caliber handgun and ammunition under the driver's seat.

After unsuccessfully moving to suppress the firearm, Rowland pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He reserved the right to appeal the district court's denial of his motion to suppress; he now exercises that right.

## II

"In reviewing the grant or denial of a motion to suppress evidence on Fourth Amendment grounds, we are bound by the district court's findings of fact regarding the circumstances of the search unless we believe on the basis of the record as a whole that the district court clearly erred." United States v. Marshall, 986 F.2d 1171, 1173 (8th Cir. 1993). We may reverse the district court's ultimate ruling on the suppression motion, however, if the ruling reflects an erroneous view of the applicable law. Id.

Rowland first argues the vehicle should never have been impounded. We disagree.

The Story County Sheriff's Department impoundment policy provides for immediate impoundment of vehicles "which a deputy has reason to believe are wrongfully possessed by the person then having control of such vehicles." Rowland argues there was no such belief. To support this assertion, Rowland points to his "candid" response that the vehicle was owned by a third party not at the scene, but he (Rowland) was in the process of purchasing the vehicle. Also, Rowland points out law enforcement had not received a report of a stolen vehicle resembling his.

The district court, on the other hand, found the officers at the scene were reasonable in believing the vehicle was wrongfully possessed. United States v. Rowland, 2002 U.S. Dist. LEXIS 12941, at *11 (S.D. Iowa May 30, 2002). In reaching this conclusion the district court reasoned: "Although Mr. Rowland told Deputy Madison he was in the process of purchasing the vehicle from the titleholder, he had no proof of his purchase. Furthermore, Mr. Rowland's trustworthiness was greatly diminished due to his outstanding arrest warrant and suspended driver's license." Id.

-4-

We are similarly compelled by these facts. Moreover, though the district court did not consider it, the impoundment policy also allows for the immediate impoundment of a "[v]ehicle positioned upon a public highway in such a location as to indicate that it constitutes a hazard to traffic." The very fact the vehicle's two occupants were both without a driver's license (Baker's was suspended, and Rowland never obtained one), and thus unable to move the vehicle off the Interstate, and because it was winter in Iowa, justified impounding the vehicle. Cf. United States v. Bridges, 245 F. Supp. 2d 1034, 1037 (S.D. Iowa 2003) (finding an impoundment and the resulting inventory search violated the Fourth Amendment because police department impoundment guidelines did not cover the circumstances of the case; defendant was free to secure the vehicle, and it was parked in a store's parking lot and did not pose a safety hazard).

III

Rowland also asserts the search of his vehicle was not an inventory search. We agree.

Law enforcement may search a lawfully impounded vehicle to compile an inventory list of the vehicle's contents without violating the Fourth Amendment. South Dakota v. Opperman, 428 U.S. 364, 376 (1976). To do so, officers need neither search warrant nor probable cause, for they are not investigating a crime; instead, they are "performing an administrative or care-taking function." Marshall, 986 F.2d at 1174 (explaining Opperman). In performing this function, officers may legitimately be protecting the owner's property while it remains in custody. Opperman, 428 U.S. at 369. They may be protecting themselves from claims of lost or damaged property or from any potential danger posed by the unknown contents of the vehicle. Id. The only limit on such searches is they must be reasonable under the circumstances. Id. Inventory searches are reasonable if "conducted according to

-5-

standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion." Id.

The Story County impoundment policy mandates within 24 hours of towing an impounded vehicle officers must "[c]omplete an inventory of all property in the vehicle and a notation of any parts of the vehicle which appear to be missing or damaged." The policy goes on to explain "The inventory is a record which is intended for use in ensuring safe return of the lawful possessor's property and resolving questions regarding the condition or contents of the vehicle."

It is uncontested law enforcement did not record all of the property in the vehicle. Rather, Deputy Madison testified, he only recorded items which might be used as possible evidence. Additionally, as the district court noted:

> Both Deputy Madison and Sergeant [Barry Michael] Thomas testified during the hearing that although officers generally "look through" all items in an impounded vehicle, it is customary within the department to record only items they perceive to be particularly valuable. In this case, the items perceived to be "of value" were those items listed on Defendant's Exhibit A as items seized.

Rowland, 2002 U.S. Dist. LEXIS 12941, at *12-13.

Accordingly, the government argues the written policy stating *all* property should be recorded in practice means all *significant* property should be recorded. The government further argues law enforcement complied with this unwritten policy, because there was nothing of value in the vehicle other than the evidence listed by Deputy Madison as seized property.

First, the government claims United States v. Lowe, 9 F.3d 43 (8th Cir. 1993), allows this court to consider the unwritten as well as the written policy of a law

enforcement agency to determine what constitutes the standard procedures under which an inventory search must be conducted. In <u>Lowe</u>, however, this court was not faced with an unwritten policy that contradicted a written policy. 9 F.3d at 46. Rather, the <u>Lowe</u> court merely accepted testimony from law enforcement that their department's policy was to inventory vehicles of persons taken into custodial arrest, and opening bags within those vehicles was part of the inventory. <u>Id.</u> Accordingly, the question of whether a written policy can be altered by an unwritten one is not answered by <u>Lowe</u>. Nor is this question answered by the authority from other circuits the government cites. <u>See</u> <u>United States v. Mendez</u>, 315 F.3d 132, 137 (2d Cir. 2002) (explaining a procedure may be proven by reference to either written rules and regulations or testimony regarding standard practices but saying nothing about contradictory written and standard policies); <u>United States v. Hawkins</u>, 279 F.3d 83, 86 (1st Cir. 2002) (stating only "a standardized inventory policy may be unwritten;" thus saying nothing about contradictory written and standard policies). Furthermore, our research has not revealed a case allowing the written procedures of law enforcement to be eroded by unwritten practice.

Second, the government argues: "While the written policy does speak in terms of an impounding officer preparing 'an inventory of *all* property in the vehicle,' to argue that this requires a literal listing of each and every article in a vehicle would constitute a *reductio ad absurdum*, especially in this case where the passenger compartment and trunk were literally packed full with all manner of clothing, food items, boxes and a multitude of miscellaneous items." Appellee's Brief at 10 (later emphasis added). Even assuming a literal listing of each and every article is not required, law enforcement's conduct still does not withstand scrutiny. Officers did not even generally note: "clothing" or "food items" or "boxes" or even "a multitude of miscellaneous items" as the government so colorfully puts it. What strikes us as absurd, therefore, is despite not even making these general notations, the government nonetheless argues it complied with a written policy which required it to record all property.

Therefore, it is our opinion by failing to make a record of all property within the vehicle, law enforcement failed to follow its own procedures and thus did not conduct the search pursuant to "standardized police procedures." Opperman, 428 U.S. at 376. This is not dispositive, however.

Even when law enforcement fails to conduct a search according to standardized procedures, this does not mandate the suppression of the evidence discovered as a result of the search. E.g., United States v. Mayfield, 161 F.3d 1143, 1145 (8th Cir. 1998). "Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's care-taking function." Id. There must be something else; something to suggest the police raised "the inventory-search banner in an after-the-fact attempt to justify" a simple investigatory search for incriminating evidence. Marshall, 986 F.2d at 1175. Here there is something else.

In this case, law enforcement called for a drug-sniffing dog to be brought to the scene. Also, officers repeatedly asked Rowland whether there was contraband in the vehicle. Likewise, both Rowland and Barker were detained, even though they were not arrested, while officers investigated them and searched the vehicle. Moreover, Deputy Madison and Sergeant Thomas, also of the Story County Sheriff's Department, testified the search was partly conducted to investigate the possibility Rowland might be trafficking narcotics. Clearly, therefore, police had an investigative motive. Such a motive alone, however, does not sour an inventory search. Marshall, 986 F.2d at 1175-76 ("The police are not precluded from conducting inventory searches when they lawfully impound the vehicle of an individual that they also happen to suspect is involved in illegal activity."). But this motive combined with what the police chose to record or not to record, concerns us.

Sergeant Thomas testified Rowland's vehicle contained an "enormity of stuff." Likewise, Deputy Madison testified the vehicle contained food, clothing, and "all

kinds of things." The vehicle contained Barker's purse, perhaps a cell-phone, an incomplete set of tools, a dog, and a cooler of perishable meat. Despite this variety, Deputy Madison testified he only recorded items he considered potential evidence.

In addressing law enforcement's failure to record some items, the district court noted:

> During the May 9, 2002 hearing, and in her supplemental resistance memorandum, counsel for defendant Barker made much of the fact that officers failed to inventory perishable meat, a cell phone, a woman's purse, a dog, and an incomplete set of tools. Deputy Madison dismissed the value of the tools by describing the tools as "odds and ends." With regard to the meat, Sergeant Thomas stated that meat is not something he necessarily would perceive to be valuable. He also noted that the woman's purse, and presumably the cell phone contained in the purse, would be considered an item of "personalty," which are inventoried at the county jail as part of the booking process. Lastly, Sergeant Thomas testified that Ms. Barker was in possession of the dog during the inventory search, which might explain why the dog was not included in the list of items seized.

> Although the Court may not agree with the officers' assessment of defendants' property, it does not believe their failure to record the above items confirms that their inventory search was pretextual.

Rowland, 2002 U.S. Dist. LEXIS 12941, at *13 n.5.

We disagree; law enforcement's failure to record property does illustrate the inventory search was pretextual. The impoundment policy makes clear: "The inventory is a record which is intended for use in ensuring safe return of the lawful possessor's property and resolving questions regarding the condition or contents of the vehicle." By choosing not to record Rowland's lawful property, law enforcement failed to take any steps to ensure the safe return of that property. Failing to take such

steps makes us doubt the police were really acting to ensure the safe return of the property.

We are not compelled by the government's argument nothing but the potential evidence contained in the vehicle was worth recording. Regardless of its market value, certainly Rowland could be expected to want his tools, clothing, and dog returned upon the release of his vehicle. Besides, even a single tool or a single piece of clothing might have value to someone other than its lawful owner. Thus, even assuming all of Rowland's possessions were of little market value, there was still a risk of theft which one concerned with safe-guarding property would have guarded against. Moreover, police did not even record in the most general of ways the clothing or tools contained in the vehicle. By failing to do so someone could have stolen all of Rowland's clothes or tools without anyone, beside himself knowing of the theft.

The government argues this case resembles <u>United States v. Garner</u>, 181 F.3d 988 (8th Cir. 1999). The government misunderstands <u>Garner</u>. In <u>Garner</u>, law enforcement did not complete an inventory form, and the defendant argued this failure demonstrated the true goal of the search was not to protect his property but rather to find evidence of a crime. <u>Id.</u> at 291. We found law enforcement's compliance with the written policy, however, vitiated concerns of an investigatory motive. We observed:

> St. Paul's impound policy does not require that the results of an inventory search be listed on a specific form nor that the inventory search be conducted in a particular manner. Regarding the manner to conduct an inventory search, Policy 445.151 only states that an inventory search shall be conducted prior to towing to the impoundment lot and that officers are permitted to search inside any container discovered if the officers are unable to ascertain its contents by examining its exterior. <u>See</u> Policy 445.151. *The district court found, and we agree, that the police officers complied with these requirements*

-10-

*when they conducted the inventory search of appellant's vehicle.* <u>See</u> Report and Recommendation at 7. Furthermore, at the evidentiary hearing on appellant's motion to suppress, Lind testified that St. Paul police generally only record valuable items discovered during an inventory search. This is why the "property record" included money, cellular phones, and drug paraphernalia, and why the only items that appear in the photos but not on either list were gloves and cigarettes. *Since neither the city policy nor the police procedures required the officers to record all items recovered during the inventory search on a specific form or in a particular fashion, the officers' failure to draft an inventory list does not prove the search was pretextual or that they acted in bad faith.*

<u>Id.</u> at 992 (emphasis added). Besides, in <u>Garner</u> the vehicle's contents were recorded in other ways. <u>Id.</u> at 991. Between a towing report, a property record, and photographs the vehicle's contents, ranging from trash to cash, were completely recorded. <u>Id.</u>

Therefore, <u>Garner</u> is not a case where law enforcement failed to follow their own procedures, let alone a case where law enforcement made a record of only the property it thought possessed evidentiary value. In short, <u>Garner</u> does not meaningfully guide our review of Rowland's appeal.

In sum, law enforcement had standardized procedures in place but failed to follow them here. Such failure, coupled with the fact the officers disregarded items without evidentiary value, even though they were of questionable monetary value, suggests they did not search the vehicle in order to safeguard the vehicle's contents from loss, or to protect law enforcement personnel from harm, or even to guard the department and county against a possible lawsuit. <u>Marshall</u>, 986 F.2d at 1175-76. Rather, it appears law enforcement sifted through the vehicle's contents searching only for and recording only incriminating evidence; something law enforcement may not do. <u>See</u> <u>id.</u> at 1175 ("The requirement that standardized criteria or established

routine exist as a precondition to a valid inventory search 'is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.'") (citation omitted).

Accordingly, this search was not a valid inventory search; more is expected of law enforcement. This proves a hollow victory for Rowland, however, for the principles of Terry v. Ohio, 392 U.S. 1, 24 (1968) justified the initial search, which in turn, pursuant to the so called "automobile exception," justified the second search during which the firearm was discovered.

IV

Even though law enforcement did not lawfully conduct an inventory search, it is still inappropriate to suppress the firearm found under the vehicle's seat. "It is a well-settled principle that we may affirm a district court's judgment on any basis supported by the record." United States v. Pierson, 219 F.3d 803, 807 (8th Cir. 2000) (rejecting the assertion that because the issue of ownership of a searched bag was not raised below it could not be considered on appeal).

First, though the government stated the facts differently in its brief, at oral argument both parties acknowledge the glove compartment was opened and the initial search conducted before Rowland was arrested. Because Rowland was not arrested, law enforcement could not have conducted a search incident to arrest pursuant to New York v. Belton, 453 U.S. 454, 460 (1981) (holding "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile"). The government's argument to the contrary, therefore, fails.

In Terry, however, the Supreme Court held a law enforcement officer may conduct a protective search for weapons if he or she has merely an articulable

-12-

suspicion a suspect is armed and dangerous. 392 U.S. at 24. While Terry did not involve a vehicle search, its principle (officer safety searches) was eventually extended to include vehicle searches. Michigan v. Long, 463 U.S. 1032, 1049 (1983). In Long the Court stated:

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Id. (quoting Terry, 392 U.S. at 21). The rationale behind such searches is equally applicable "whether there is an arrest, an inventory search, neither, or both." United States v. Shranklen, 315 F.3d 959, 961 (8th Cir. 2003). Therefore, "[a]t any investigative stop . . . officers may take steps reasonably necessary to protect their personal safety." Id.

In this Circuit, the validity of a Terry search does not depend upon the searching officer actually fearing the suspect is dangerous; rather, such a search is valid if a hypothetical officer in the same circumstances could reasonably believe the suspect is dangerous. United States v. Roggeman, 279 F.3d 573, 581 (8th Cir. 2002); United States v. Cummings, 920 F.2d 498, 502 (8th Cir. 1990). But see e.g., United States v. Wald, 216 F.3d 1222, 1227 (10th Cir. 2000) (noting the circuits are split on the issue; while the Seventh and the Eighth reason a particular officer's motivation is irrelevant to the Terry reasonableness analysis, the First and the Ninth consider the actual motivation of an officer dispositive).

Additionally, it is well settled a Terry search of a vehicle's interior is permissible even after the un-arrested occupants have been removed from the vehicle. Long, 463 U.S. at 1051-52 ("[J]ust as a Terry suspect on the street may, despite being

-13-

under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a Terry suspect in Long's position break away from police control and retrieve a weapon from his automobile. Also, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside."); see also Shranklen, 315 F.3d at 962 ("[A] search for weapons at an investigative stop can be reasonable, even where suspects lack immediate access to weapons. Rather, it is enough that the suspects might be able to access the weapons stored in their vehicle."); United States v. Navarrete-Barron, 192 F.3d 786, 791 (8th Cir. 1999) ("It is well established that once reasonable suspicion is established, a search of a vehicle's interior is permissible regardless of whether police officers have removed the occupants of the vehicle."); United States v. Peoples, 925 F.2d 1082, 1087 (8th Cir. 1991) ("Absent an arrest, the suspects would have been free to reenter the van and pose a danger to the officers."). Although the vehicle here had been slated for impoundment, it remained sitting along the roadside. Rowland or Barker, therefore, might have broken from police control and retrieved a weapon. Also, either Rowland or Barker might have gained access to the vehicle while awaiting arrival of the tow-truck.

The circumstances surrounding this stop made it reasonable to conduct a Terry search. First, it was a traffic stop, and such police/citizen encounters possess an "inherent danger." United States v. Menard, 95 F.3d 9, 11 (8th Cir. 1996). Second, neither Barker nor Rowland could prove ownership of the vehicle in which they were riding. From these facts, law enforcement could infer the vehicle might be stolen, and as possible car thieves Rowland or Barker might possess weapons. Shranklen, 315 F.3d at 963 ("[N]either Shranklen nor Fleming could prove ownership of the vehicle in which they were riding, and Shranklen was driving on a suspended license and Fleming carried a suspended license; from these facts, [officer] Harmon could infer that Shranklen and Fleming might have stolen the car and, therefore, might have weapons in the car that they used during the theft or had available in case they were discovered and sought to escape."). Third, there was an outstanding arrest warrant

-14-

for Rowland, which might have made him more likely to injure a police officer in an effort to avoid apprehension.

Because Rowland was not yet arrested, and there was reasonable suspicion to believe he or his traveling companion posed a risk to officer safety, a <u>Terry</u> search was permissible. Thus, officers were justified in conducting a search of any area within the passenger compartment where a weapon could have been concealed. <u>Long</u>, 463 U.S. at 1049. Those areas initially searched by law enforcement fit within this definition. Specifically, during their initial search of the vehicle, officers found a syringe in the glove compartment. <u>United States v. Lyles</u>, 946 F.2d 78, 81 (8th Cir. 1991) (upholding the search of a glove compartment). They also discovered rolling papers and razor blades elsewhere in the passenger compartment.[2]

These legal discoveries alone could have supported the warrantless search of the remainder of the vehicle under the "automobile exception" to the Fourth Amendment's warrant requirement if the discovery gave officers probable cause to believe the vehicle contained contraband or other evidence of a crime before they began to search. <u>United States v. Riedesel</u>, 987 F.2d 1383, 1389 (8th Cir. 1993) (reiterating pursuant to the "automobile exception" a vehicle may be searched without a warrant if there is probable cause); <u>see</u> <u>also</u> <u>Carroll v. United States</u>, 267 U.S. 132, 158-59 (1925) (creating the exception).

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." <u>United States v. Fladten</u>, 230 F.3d 1083, 1085 (8th Cir. 2000). "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that

---

[2]In fact, had law enforcement immediately looked under the seat and discovered the firearm. That, too, would have been legal under <u>Terry</u>.

may conceal the object of the search." <u>United States v. Ross</u>, 456 U.S. 798, 825 (1982). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." <u>Michigan v. Thomas</u>, 458 U.S. 259, 261 (1982) (per curiam).

The discovery of razor blades, rolling papers, and a syringe during the <u>Terry</u> search was sufficient to create probable cause to search the entire vehicle. Past cases in the "plain view" context buttress this conclusion. <u>E.g.</u>, <u>United States v. Reinholz</u>, 245 F.3d 765, 776 (8th Cir.) (approving search of vehicle parked in the driveway of a residence being searched, which contained drug paraphernalia clearly visible through vehicle's windows), <u>cert. denied</u>, 534 U.S. 896 (2001); <u>United States v. Fladten</u>, 230 F.3d 1083, 1086 (8th Cir. 2000) (concluding observation of "an item commonly used in the manufacture of methamphetamine . . . in plain view in the back seat" of an automobile gave officers probable cause to search other parts of the automobile for further contraband or evidence). Because the second search, which uncovered the firearm was undertaken after probable cause to conduct an investigatory search of the entire vehicle had been established, there is no need to suppress the firearm. Accordingly, the decision below is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-16-