24-2784-cr (L)
*United States v. Carmona*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of April, two thousand twenty-six.

Present:
>    DEBRA ANN LIVINGSTON,
>        *Chief Judge,*
>    BARRINGTON D. PARKER,
>    MYRNA PÉREZ,
>        *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

>        *Appellee,*

>    v.                                              24-2784 (Lead)
                                                     24-2977 (Con)
                                                     24-3264 (Con)

MARCO RUIZ OCHOA, MOSES VALDEZ, JUAN ARELLANO,

>        *Defendants,*

DAVID CARMONA, DAVID BREND, GUSTAVO RODRIGUEZ,

>        *Defendants-Appellants.*

_____

For Appellee:                T. JOSIAH PERTZ, Michael D. Maimin, Jacob R. Fiddelman, Assistant United States Attorneys *for* Jay Clayton, United States Attorney for the Southern District of New York, New York, NY.

1

For Defendants-Appellants:

RICHARD D. WILLSTATTER, Green & Willstatter, White Plains, NY, *for Defendant-Appellant David Carmona*.

PETER J. TOMAO, Esq., Garden City, NY, *for Defendant-Appellant David Brend*.

JEFFREY COHN, Esq., New York, NY, *for Defendant-Appellant Gustavo Rodriguez*.

Appeal from judgments of the United States District Court for the Southern District of New York (Rochon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants David Carmona, David Brend, and Gustavo Rodriguez appeal from amended judgments of conviction entered on January 28, 2025 as to Carmona and February 28, 2025 as to Brend and Rodriguez by the United States District Court for the Southern District of New York.

This appeal concerns the IcomTech cryptocurrency Ponzi scheme. IcomTech purported to be a cryptocurrency-focused multi-level marketing ("MLM") scheme. Instead, it was a fraud. Defendants-Appellants are the founder of IcomTech, David Carmona; its website designer, Gustavo Rodriguez; and one of IcomTech's top promoters, David Brend. Carmona, Rodriguez, and Brend, along with several non-appellant defendants, were indicted in the Southern District of New York and charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. Carmona pleaded guilty. After a nine-day trial, the jury returned a guilty verdict as to Rodriguez and Brend. The district court sentenced all three to various terms of imprisonment followed by supervised release and ordered forfeiture and restitution.

2

Appellants raise several issues on appeal, including (1) that the evidence was insufficient to find that Brend had the requisite knowledge that IcomTech was a fraud; (2) that the district court abused its discretion in admitting evidence of Brend's participation in other fraudulent Ponzi schemes while declining to allow him to present evidence that he participated in lawful MLMs; (3) that the district court abused its discretion in admitting evidence of the impact of the crime on victims; (4) that the district court improperly provided a conscious avoidance jury instruction; (5) that the district court erred in denying Rodriguez's request for a mistrial in response to a jury note; (6) that Appellants' sentences are procedurally unreasonable; and (7) that Brend and Rodriguez received ineffective assistance of counsel at trial.

We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we set forth in this summary order only as necessary to explain our decision to **AFFIRM**.

**1.      Sufficiency of the Evidence**

Brend first argues there was insufficient evidence to prove he had the requisite knowledge that IcomTech was fraudulent.[1] Brend Br. at 31. We disagree. In assessing a sufficiency of the evidence challenge, "we view the evidence in the light most favorable to the Government with all reasonable inferences resolved in the Government's favor." *United States v. Requena*, 980 F.3d 30, 43 (2d Cir. 2020). The "verdict must be upheld if any rational trier of fact could have found the essential elements of the crime had been proved beyond a reasonable doubt." *United States v. Valle*, 807 F.3d 508, 515 (2d Cir. 2015).

---

[1] Brend does not challenge the sufficiency of the evidence as to the existence of a conspiracy, only that he participated in the conspiracy with knowledge of its unlawful objective. *See* Brend Br. at 31 ("The issue was not whether IcomTech was a fraud, which was conceded, but rather whether Mr. Brend had the requisite knowledge at the time.").

Here, the evidence was sufficient to support Brend's conviction. At trial, the government introduced evidence that Brend directed IcomTech victims to send money to his shell company with false statements on the memo lines of checks; that he structured his deposits and withdrawals to avoid $10,000 reporting thresholds; that Brend touted his relationship with IcomTech's leadership to draw in victims; and that when victims considered withdrawing funds, Brend attempted to convince them not to. Moreover, the government introduced evidence at trial that Brend promoted several other fraudulent cryptocurrency Ponzi schemes to the IcomTech victims. *See e.g.*, Trial Tr. at 1188–95. Brend's misstatements to victims, directions to channel money to his shell company, and attempts to lull investors to remain invested in the scheme amply support the jury's conclusion that Brend had knowledge of IcomTech's unlawful ends. As the district court properly concluded, Brend's argument "boil[s] down to his contention that inferences could have been drawn in favor of his ignorance and thus innocence of the scheme, rather than in favor of finding him guilty of knowingly joining the conspiracy." Brend App'x 647. We agree with the district court that the jury had an ample basis on which to draw such inferences in favor of Brend's knowing participation in the crime. Thus, the district court did not err in denying Brend's Rule 29 and Rule 33 motions.

### 2. Evidentiary Rulings

Brend argues that the district court erred in admitting evidence of his participation in other fraudulent cryptocurrency schemes while preventing him from introducing evidence of his participation in lawful MLM businesses. Rodriguez argues, for his part, that the district court erred in admitting evidence concerning the victims' experiences when they lost money to the IcomTech scheme.

We review "rulings on the admissibility of trial evidence for abuse of discretion." *United States v. Rowland*, 826 F.3d 100, 114 (2d Cir. 2016). "A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence or rendered a decision that cannot be located within the range of permissible decisions." *United States v. Fazio*, 770 F.3d 160, 165 (2d Cir. 2014) (quoting *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008)). We reverse only if an error affects a "substantial right," Fed. R. Evid. 103(a), meaning that the error "had a 'substantial and injurious effect or influence' on the jury's verdict," *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (quoting *United States v. Dukagjini*, 326 F.3d 45, 62 (2d Cir. 2003)). "[W]here a court, upon review of the entire record, is sure that the evidentiary error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." *Id.* (alterations adopted and other marks omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)).

Brend's arguments are unavailing. First, the district court properly admitted the evidence of Brend's participation in other fraudulent cryptocurrency schemes. Such evidence is plainly admissible under Rule 404(b), as it shows Brend's intent and absence of mistake. Moreover, such evidence is particularly probative in a case like this where Brend's defense was that he merely "acted as a conduit" or was himself a victim. Brend Br. at 34; *see United States v. Gata-Aura*, No. 22-283, 2024 WL 389422, at *2 (2d Cir. Feb. 2, 2024) (summary order) ("[T]he probative value of the prior conviction was magnified by Moore's defense in this case, . . . that he, like the investors, was tricked . . . and that he terminated his relationship . . . as soon as he learned of the fraud.").

The district court also properly denied Brend's request to provide evidence of his participation in non-fraudulent MLMs. Generally, "good acts" character evidence is not allowed.

*See United States v. Dawkins*, 999 F.3d 767, 792 (2d Cir. 2021) (explaining that "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions" because "such 'good acts' evidence is only relevant if we assume that a defendant acted in conformity with those prior good acts—*i.e.*, if we make the exact propensity inference Rule 404(b)(1) is designed to prohibit" (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990))); *United States v. Damti*, 109 F. App'x 454, 455–56 (2d Cir. 2004) (summary order). However, evidence of prior good acts may be admitted where it "bears directly on [the defendant's] state of mind," rather than his character. *United States v. Roldan*, 167 F.4th 569, 579 (2d Cir. 2026). On appeal, Brend does not explain what evidence he would have admitted, nor why it would have been relevant. Accordingly, we can discern no error in the district court's rejection of Brend's bid to admit evidence.

As to Rodriguez, even assuming *arguendo* that the district court improperly admitted evidence of victim experience, he fails to argue successfully that he suffered any prejudice. The other trial evidence overwhelmingly supports the jury's verdict. Rodriguez's communications with Carmona, the ringleader of the IcomTech scheme, throughout the course of the conspiracy demonstrated his knowledge of the conspiracy at the very time he developed the website that was central to executing the scheme. Thus, any error had no "substantial and injurious effect or influence on the jury's verdict." *Garcia*, 413 F.3d at 210 (internal quotation marks omitted).

### 3.      Conscious Avoidance

Rodriguez directly challenges the district court's use of a conscious avoidance charge, and Brend collaterally attacks the conscious avoidance instruction via his ineffective assistance of counsel claim. "We review a claim of error in jury instructions *de novo*, reversing only where, viewing the charge as a whole, there was a prejudicial error." *United States v. Aina-Marshall*, 336

6

F.3d 167, 170 (2d Cir. 2003). A conscious avoidance charge, also known as "willful blindness," *United States v. Graham*, 51 F.4th 67, 83 (2d Cir. 2022), is proper where the defendant has asserted "the lack of some specific aspect of knowledge required for conviction" and there is "an appropriate factual predicate for the charge, i.e., the evidence is such that a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact," *United States v. Fofanah*, 765 F.3d 141, 144–45 (2d Cir. 2014) (cleaned up).

Both Brend and Rodriguez primarily argue that there was no factual predicate for the charge and the instruction was thus inappropriate, but this Court has recognized this is precisely the type of case where the conscious avoidance charge is appropriate. When "sufficiently suspicious circumstances" are present, "a mere failure to ask questions—even absent more affirmative steps of avoidance—can demonstrate conscious avoidance." *United States v. Wedd*, 993 F.3d 104, 119 (2d Cir. 2021). Sufficient red flags existed to support a conscious avoidance charge. *See United States v. Ferguson*, 676 F.3d 260, 278 (2d Cir. 2011) ("Red flags about the legitimacy of a transaction can be used to show both actual knowledge and conscious avoidance."). For example, Rodriguez created the website that, critical to the scheme, displayed ever-increasing victim earnings and, in discussions with Carmona, expressed concerns that the website might "get a lot of exposure" and "look[] more Ponzi-like." Trial Tr. at 1078–79.

Moreover, "an erroneously given conscious avoidance instruction constitutes harmless error if the jury was charged on actual knowledge and there was 'overwhelming evidence' to support a finding that the defendant instead possessed *actual* knowledge of the fact at issue." *See United States v. Ferrarini*, 219 F.3d 145, 154 (2d Cir. 2000). The district court did instruct the jury on actual knowledge, Trial Tr. 1575–77, which was very strongly supported by the evidence

at trial. And in any event, there was a sufficient if not significant factual predicate for the conscious avoidance charge here.

### 4. Jury Note

Rodriguez next argues that the district court abused its discretion in declining to grant a mistrial in response to a jury note.[2] We disagree. "The decision to declare a mistrial is left to the sound discretion of the judge, but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes." *Renico v. Lett*, 559 U.S. 766, 774 (2010) (internal quotation marks omitted). Institutional considerations counsel "in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias." *Arizona v. Washington*, 434 U.S. 497, 513 (1978).

The jury note provides no basis for concluding that a mistrial was appropriate. Nothing in the note and nothing adduced at trial suggests that external considerations entered the jury room to induce a sense of fear. *Cf. United States v. Ruggiero*, 928 F.2d 1289, 1300 (2d Cir. 1991) (affirming district court's dismissal of a juror who expressed "a continuing state of fearfulness" after being approached by two men in his driveway late at night). And to the extent the jury note did suggest that some jurors might have apprehensions about the publication of their identities, whether such apprehensions warranted further investigation is precisely the sort of issue that our precedent recognizes the district court is in the best position to resolve, exercising its sound discretion. *See, e.g.*, *id.* at 1301 ("Further, decisions as to when to question jurors and the manner of that inquiry are generally left to the trial judge's broad discretion."). Moreover, the district court

---

[2] The jury note read: "We have a question about our identity and the confidentiality of it post trial. Names were written during jury selection and some concerns around that." Trial Tr. at 1602. Before the court and the parties had an opportunity to discuss possible responses, the jury reported that it had arrived at a verdict. Trial Tr. at 1603. Rodriguez moved for a mistrial, suggesting that the jury could be "afraid of the defendants." Trial Tr. at 1604–05. The district court declined to inquire into the deliberative process and denied the mistrial motion. Trial Tr. at 1614–15.

had already instructed the jury not to base their verdict on "fear or sympathy or bias." Trial Tr. at 1586–87, 1614. Accordingly, the district court did not abuse its discretion in declining to declare a mistrial.

### 5. Procedural Reasonableness

Appellants all argue that their sentences were procedurally unreasonable. The primary thrust of their argument is that the district court improperly calculated the loss attributable to the scheme and, therefore, improperly calculated the applicable Guidelines range.[3] We disagree. "A district court commits procedural error where it fails to calculate the Guidelines range . . . , makes a mistake in its Guidelines calculation, . . . treats the Guidelines as mandatory[,] . . . does not consider the § 3553(a) factors, or rests its sentence on a clearly erroneous finding of fact." *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (citations omitted). In assessing the procedural reasonableness of a sentence, we "review[] the district court's interpretation of the Sentencing Guidelines *de novo*" and its factual findings for clear error. *United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir. 2005).

Section 2B1.1(b) of the Sentencing Guidelines provides for a stepped, cumulative sentencing enhancement based on the loss amount attributable to the unlawful scheme. Application Note 3(A) defines "loss" as the "greater of actual loss or intended loss." U.S. Sent'g

---

[3] Brend also argues that the district court erroneously applied a sophisticated means enhancement as well as an obstruction of justice enhancement. We disagree. The Guidelines specifically state that "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means." U.S. Sent'g Guidelines Manual § 2B1.1 cmt. n.9 (U.S. Sent'g Comm'n 2024). Here, Brend used a shell company and directed victims to make false representations on the checks paid to the shell company. As to the obstruction of justice enhancement, Brend did not merely continue to assert his own innocence despite a contrary jury verdict. For example, Brend asserted in a sworn declaration that he never took money from the victims for his own use, because his bank accounts were used to exchange received monies for Bitcoin in a "dollar for dollar exchange." *See* Brend App'x 354. However, ample trial evidence showed that he used the money paid into his shell company to pay his personal credit card bills and make payments to his wife. Accordingly, the district court did not err in applying these enhancements. *See United States v. Lewis*, 62 F.4th 733, 746–47 (2d Cir. 2023).

9

Guidelines Manual § 2B1.1(b)(10)(c) cmt. n.3(A) (U.S. Sent'g Comm'n 2023).  "The sentencing court is only required to make a reasonable estimate of the loss."  *United States v. Lacey*, 699 F.3d 710, 719 (2d Cir. 2012) (internal quotation marks omitted).  Deference to the district court's loss determination is particularly appropriate "where, as here, the sentencing judge also presided over a weeks-long trial and heard a great deal of live testimony."  *See id.* at 720.

Here, the district court concluded that the losses attributable to the IcomTech scheme were greater than $25 million but less than $65 million.  That calculation was not clearly erroneous, as the trial evidence substantiated the district court's calculation.  The district court based its conclusion on, *inter alia*, the Hernandez spreadsheet.  Carmona App'x 161.  This spreadsheet reflected a $58 million balance invested in the scheme from approximately 24,000 individuals.  Carmona App'x 162, 165.  These loss numbers were, in part, corroborated by victim testimony and the testimony of Juan Arellano.  Moreover, the district court considered a screenshot sent by Carmona to Rodriguez in March 2019, reflecting IcomTech earnings of at least $21 million, months before the scheme would unravel.  Carmona App'x 164.  Thus, the district court did not clearly err in concluding that the loss amount was greater than $25 million but less than $65 million.[4]

### 6.  Ineffective Assistance of Counsel

Brend and Rodriguez each argue that they received ineffective assistance of counsel.  Brend argues that the district court erred in denying his posttrial Rule 33 motion which was

---

[4] All Appellants received sentences significantly below the applicable Guidelines range, so even if the district court clearly erred in its loss calculation, that error was harmless.  *See United States v. Thompso*n, 921 F.3d 82, 88 (2d Cir. 2019).  The district court specifically explained that it would impose the same sentences regardless of the potentially differing Guidelines ranges at stake, *see, e.g.*, Carmona App'x 227–28, which squarely renders the purported errors harmless in any event, *see United States v. Moseley*, 980 F.3d 9, 28–29 (2d Cir. 2020) (explaining any error may be harmless where "the District Court specifically states that it would have departed to the same level regardless of whether it had accepted the defendant's guideline arguments" (quoting *United States v. Elefant*, 999 F.2d 674, 678 (2d Cir. 1993))).

premised in part on an ineffective assistance of counsel claim, while Rodriguez brings his ineffective assistance claim on direct appeal. Both claims are unavailing. To prevail on an ineffective assistance of counsel claim, a defendant must (1) demonstrate that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms;" and (2) "affirmatively prove prejudice." *Strickland v. Washington*, 466 U.S. 668, 687–88, 693–94 (1984). The Supreme Court has instructed that, because "[t]he object of an ineffectiveness claim is not to grade counsel's performance," "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

On appeal, Brend largely rehashes the same arguments made in his Rule 33 motion. Each of these arguments again fail. First, the district court correctly reasoned that Brend's proposed additional witnesses could not speak to his knowledge of the fraudulent nature of the scheme due to hearsay restraints. Brend App'x 654. Second, the district court correctly concluded that evidence of transfers from his cryptocurrency wallet "fit squarely within the IcomTech scheme." Brend App'x 655 (internal quotation marks omitted). Third, the decision not to call Brend as a witness does not amount to ineffective assistance because Brend does not claim that trial counsel failed to inform him of his right to testify or overrode his desire to testify. Brend App'x 657.

As to Rodriguez, because "in most cases a motion brought under [28 U.S.C.] § 2255 is preferable to direct appeal for deciding claims of ineffective assistance," *Massaro v. United States*, 538 U.S. 500, 504–05 (2003), we decline to consider Rodriguez's claim here, *see United States v. Morris*, 350 F.3d 32, 39 (2d Cir. 2003) ("When faced with a claim for ineffective assistance of counsel on direct appeal, we may: (1) decline to hear the claim, permitting the appellant to raise

the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 . . . .").

\*     \*     \*

We have considered Appellants' remaining arguments and find them to be without merit. Accordingly, the judgments of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk