# United States Court of Appeals
## For the First Circuit

---

No. 01-2073

UNITED STATES OF AMERICA,

Appellee,

v.

DARREN JOHN HAWKINS,
A/K/A DARREN WOOD, A/K/A/ DARREN ALLEN,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Coffin, Senior Circuit Judge,

and Torruella, Circuit Judge.

---

Stephen C. Smith, for appellant.
Margaret D. McGaughey, Appellate Chief, with whom Paula D. Silsby,
United States Attorney, were on brief for appellee.

---

February 6, 2002

**TORRUELLA, Circuit Judge.** Defendant-appellant, Darren John Hawkins, appeals the district court's refusal to grant his suppression motion. This motion sought to exclude the contents of a jar, which the district court held had been opened and its contents examined pursuant to a standardized inventory. Because we hold that it was not clearly erroneous for the district court to conclude that the police inventory procedures contained an unwritten addendum that officers should remove all contents from a container when inventorying that container, the search of the jar and its contents was permissible as an inventory search. Therefore, we affirm the district court's decision denying appellant's motion to suppress.

## I.

On July 14, 2000, Officer Christopher Hashey observed appellant driving his motorcycle erratically. Officer Hashey began following appellant, and the pursuit became a high-speed chase which resulted in appellant crashing into a semi-tractor trailer truck. Appellant ended up unconscious on the road, partially under his motorcycle, which was, in turn, partially under the truck.

When paramedics arrived on the scene, they removed appellant from the road and placed him inside the awaiting ambulance. At some point, the paramedics began removing appellant's garments because they were soaked with gasoline. One of the paramedics, Andrew Fish, noticed that appellant had a transparent plastic baggie in his sock that

contained a green leafy substance.  Fish called out to Officer Hashey, who came over, took possession of the bag, and identified the substance as marijuana.   The ambulance departed a short time later.

Another officer, George Spencer, Jr., was sent to the Eastern Maine Medical Center with a "blood kit" to perform a blood analysis on the appellant.  After the paramedics arrived with appellant, Fish began collecting appellant's clothing from inside the ambulance.  It is standard procedure to collect any personal belongings left in the ambulance and deliver them to the hospital staff.  As Fish was doing this, he noticed that appellant's cut-up leather jacket was unusually heavy.  He observed half of a glass jar protruding from the jacket pocket.  Fearing that the jacket might also contain a weapon, Fish took the jacket inside the hospital where he hoped to find a police officer. He found Officer Spencer and turned the jacket over to him.

Officer Spencer, accompanied by Fish, took the jacket into the hospital's EMT room and removed all of its contents.  This included the jar, an electronic scale, and a black glove.  The jar was about five or six inches tall, about three or four inches in diameter, partially covered by a peanut butter label, and topped with a yellow screw-on lid.  Officer Spencer opened the jar and reached inside, where he felt a plastic bag with something solid inside.  He then deposited the jacket, jar, scale, and glove in the trunk of his police cruiser.

Meanwhile, two agents from the Maine Drug Enforcement Agency ("MDEA") arrived. Spencer turned over the jacket and its contents to these two officers, Robert Hutchings and Mark Leonard. These agents then searched the jar. Hutchings, who is also a member of the Bangor Police Department, removed the opaque plastic bag from the jar, untied it, and found three transparent plastic bags containing white powder. Agent Hutchings believed this to be cocaine, and a field test confirmed that belief.

The Bangor Police Department has a written policy instructing its officers on how to treat property and evidence that they find. Nothing in the policy tells officers what to do when inventorying containers, such as whether to open those containers. The MDEA also has policies regarding inventory searches which do not address the proper procedures for dealing with a closed container.

At the suppression hearing, Agent Hutchings testified that there is no written policy on how to inventory closed containers. Agent Hutchings also testified that if he found a coat from a citizen on the street, "It would be the same as in the situation here. Anything -- the jacket and its contents within it would be logged and labeled and placed into evidence for either safekeeping or for . . . court preparation or for analysis."

**II.**

Generally, our review of a district court's denial of a suppression motion is plenary. See United States v. DeMasi, 40 F.3d 1306, 1311 (1st Cir. 1994). Moreover, we will uphold a district court's decision to deny a suppression motion provided that any reasonable view of the evidence supports the decision. See United States v. Charles, 213 F.3d 10, 18 (1st Cir. 2000); see also United States v. García, 983 F.2d 1160, 1167 (1st Cir. 1993). However, we review the factual findings of the district court for clear error. See United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996). "A clear error exists only if, after considering all the evidence, we are left with a definite and firm conviction that a mistake has been made." Id.; see also United States v. McLaughlin, 957 F.2d 12, 17 (1st Cir. 1992). "This deference to the district court's findings of facts 'reflects our awareness that the trial judge, who hears the testimony, observes the witnesses' demeanor and evaluates the facts first hand, sits in the best position to determine what actually happened.'" Charles, 213 F.3d at 18 (quoting United States v. Young, 105 F.3d 1, 5 (1st Cir. 1997)).

**A.**

The district court held that the contents of the jar were properly obtained during a standardized inventory. To reach that holding, the district court made a crucial factual finding: that both the MDEA and the Bangor Police Department have unwritten addenda to

-6-

their inventory policies which require officers to open closed containers.

Here Agent Hutchings testified that any jacket and its contents would be treated similarly, regardless of the circumstances under which the police obtained custody of the jacket. Therefore, it was not clear error for the district court to find an unwritten policy requiring officers to open and investigate all closed containers when performing an inventory.

A warrantless search is permitted under the Fourth Amendment if it is carried out pursuant to a standardized inventory policy. See Illinois v. Lafayette, 462 U.S. 640, 647-48 (1983). Such a standardized inventory policy may be unwritten. See United States v. Infante-Ruiz, 13 F.3d 498, 503 (1st Cir. 1994); see also United States v. Macera-Londono, 912 F.2d 373, 375 (1st Cir. 1990). Because the district court found that there was a standardized, albeit unwritten, inventory policy compelling officers to open containers to determine their contents during an inventory, the drug evidence was properly obtained.

**B.**

Appellant also challenges the search saying that the inventory was clearly a "ruse" used to search for drugs. Regardless of what appellant suggests, the law is clear. The subjective intent of the officers is not relevant so long as they conduct a search according

-7-

to a standardized inventory policy.  <u>See</u> <u>Colorado</u> v. <u>Bertine</u>, 479 U.S. 367, 373 (1987).  Because the inventory was conducted in accordance with standard procedure, it was valid.

### III.

For the reasons stated above, we **affirm** the district court's denial of the appellant's motion to suppress.