**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. MARK PATRICK JOHNSON, *Defendant-Appellant.* | No. 15-30222 D.C. No. 3:14-cr-00224-JO-1 OPINION |

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, Senior District Judge, Presiding

Argued and Submitted October 5, 2017
Portland, Oregon

Filed May 14, 2018

Before: Diarmuid F. O'Scannlain, Richard A. Paez,
and Carlos T. Bea, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge O'Scannlain;
Concurrence by Judge Paez

# SUMMARY[*]

## Criminal Law

The panel reversed the district court's denial of a motion to suppress evidence found on the defendant's person and in the car he was driving at the time of his arrest; vacated his conviction and sentence for possession with intent to distribute methamphetamine; and remanded for further proceedings.

The defendant argued that the manner in which the officers arrested him was a pretext to conduct the inventory search that followed. The panel held that the defendant failed to show that the officers' decision to pull him over and to impound his car would not have occurred in the absence of an impermissible reason.

In light of *United States v. Orozco*, 858 F.3d 1204 (9th Cir. 2017), the panel held that the officers' search and seizure of items from the defendant's car cannot be justified under the inventory-search doctrine because the officers explicitly admitted that they seized the items in an effort to search for evidence of criminal activity. Because the government did not offer any justification for the seizure of the property other than the inventory-search doctrine, the panel concluded that the district court erred in denying the motion to suppress.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Specially concurring, Judge O'Scannlain (joined by Judge Bea) concurred fully in the court's opinion, which faithfully follows *Orozco*, but wrote separately because he believes *Orozco* contradicts earlier Supreme Court precedent and ought to be reconsidered by this court.

Specially concurring, Judge Paez concurred in the court's opinion without reservation; he disagrees with his colleagues' separate concurrence that *Orozco* should be revisited in light of *Brigham v. City of Stuart*, 547 U.S. 398 (2006).

## COUNSEL

Tonia Louise Moro (argued), Tonia L. Moro Attorney at Law PC, Medford, Oregon, for Defendant-Appellant.

Hannah Horsley (argued), Assistant United States Attorney; Kelly A. Zusman, Appellate Chief; Billy J. Williams, United States Attorney; United States Attorney's Office, Portland, Oregon; for Plaintiff-Appellee.

**OPINION**

PER CURIAM:

We must decide whether the trial court erred in failing to suppress evidence that was seized by City of Portland police officers during their inventory search of a criminal defendant and the car he was driving at the time of his arrest.

I

A

On April 10, 2014, Multnomah County Sheriff's deputies located Mark Johnson—who had an outstanding warrant for his arrest based on a post-prison supervision violation—at the Clackamas Inn, just south of Portland, Oregon. The deputies followed Johnson to a residence in the nearby town of Gladstone and called Portland Police Bureau (PPB) Officers Joseph Corona and Jerry Ables for assistance in arresting him.

The officers did not approach Johnson at the residence, but instead waited outside. After about 20 minutes, Johnson left, and again the officers followed him. At a nearby intersection, the officers finally stopped Johnson by loosely boxing in his car; one car approached Johnson from behind while another approached from the front, effectively blocking Johnson's ability to drive away. The cars all came to a stop within a few feet of each other, and although there was enough room for Johnson to pull his car to the side of the road, he instead parked in the lane of traffic, disrupting the flow of passing cars. When approached by the officers, Johnson could not provide proof of insurance for the car, which he was borrowing, nor could he give anything other

than the first name of the car's owner. Johnson did not know how the police could contact the owner.

The officers arrested Johnson on the outstanding warrant. Incident to the arrest, the officers searched Johnson and found a folding knife in his front pocket, $7,100 in cash in $20 and $100 denominations in his rear pants pocket, and $150 in cash in his wallet. Johnson said that he had recently inherited the $7,100 and that he planned to purchase a car with it (though he did not know what kind of car he intended to buy or where he would purchase it).

Because Johnson's car was blocking traffic and because Johnson could not provide contact information for the car's owner, the officers ordered it to be towed and impounded, pursuant to PPB policy. Prior to the tow, the officers conducted an inventory search of the car, again pursuant to local policy. From the interior of the car, the officers collected a combination stun gun and flashlight, a glass pipe with white residue, a jacket, and two cellphones. From the trunk, the officers collected a backpack and a duffel bag. Officer Corona testified that, when he moved the backpack and duffel in order to search for other items in the trunk, the bags felt heavy and the backpack made a metallic "clink" when he set it down on the pavement. PPB stored each of the seized pieces of property in the County property and evidence warehouse, and the $7,100 was taken into custody by the County Sherriff's Office. Officer Corona recorded each item seized on an accompanying arrest report; the Sheriff's Office prepared a property receipt for the $7,100 in seized cash.

A week later, Officer Corona submitted an affidavit to secure a warrant to search the seized backpack, duffel bag, and cell phones. The affidavit referred to a 2009 police report (which Corona read after arresting Johnson) that

stated Johnson had previously been found with cash, weapons, and drugs in a safe concealed in his vehicle. Officer Corona's affidavit stated that, based on the circumstances of Johnson's recent arrest, he had probable cause to believe the bags seized from the trunk would contain similar lockboxes, and that the phones would contain evidence of drug dealing.

A warrant was duly signed by a local magistrate judge, and a search of the backpack revealed a small safe containing two bags of methamphetamine, drug-packaging materials, syringes, and a digital scale. The backpack also contained paperwork with notes on court cases that corresponded to several criminal prosecutions of Johnson. The duffel bag contained Johnson's personal items, and one of the cellphones contained text messages regarding drug trafficking.

B

Johnson was indicted on one charge of possession with intent to distribute methamphetamine in an amount of 50 grams or more, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii).

Before trial, Johnson moved to suppress the evidence found in the car and on his person at arrest. Primarily, Johnson challenged the evidence supporting the warrant to search the backpack and cellphones, arguing that it did not amount to probable cause. Johnson also argued that the officers unlawfully manipulated the bags they seized from the car in order to get a sense for what they might contain and that the inventory search of his car was invalid. The district court denied the motion, concluding that there was probable cause to stop and to arrest Johnson on the outstanding warrant, the officers validly impounded

Johnson's car because it was blocking traffic, the subsequent inventory of the vehicle was "lawful because [PPB] mandates officers to conduct an inventory of impounded vehicles," and the search warrant was supported by probable cause.

At trial, the government introduced the evidence found in Johnson's car and on his person, with a particular focus on the items of evidence found in the backpack, the messages from the cellphone, and the $7,100 in cash. The jury found him guilty.

Approximately four months later, Johnson filed a motion for new trial on the basis of, among other things, two pieces of supposedly newly discovered evidence: (1) evidence showing that Johnson had indeed recently received an inheritance; and (2) a receipt from the private company that towed and impounded his car, which stated that they found various additional items of property in the car that were not listed in Officer Corona's arrest report. After a hearing, the district court denied the motion for a new trial upon the conclusion that none of the supposedly new evidence would have resulted in a likely acquittal.

Johnson was sentenced to 188 months in prison, and he now timely appeals.

II

Johnson argues that the district court erred in denying his motion to suppress, because the officers' inspection of his car exceeded the constitutionally permissible bounds for an inventory search.

As an exception to the warrant requirement of the Fourth Amendment to the United States Constitution, "police may,

without a warrant, impound and search a motor vehicle so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic." *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016). The purpose of such a search is to "produce an inventory" of the items in the car, in order "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Florida v. Wells*, 495 U.S. 1, 4 (1990) (internal quotation marks omitted). Thus, the purpose of the search must be non-investigative; it must be "conducted on the basis of something *other* than suspicion of evidence of criminal activity." *Torres*, 828 F.3d at 1118 (emphasis added) (internal quotation marks omitted). The search cannot be "a ruse for a general rummaging in order to discover incriminating evidence." *Wells*, 495 U.S. at 4.

Johnson contends that the officers in this case impounded and searched the car he was driving not for any legitimate inventory purposes, but rather as a pretext to look for evidence of wrongdoing. He urges that both the officers' actions leading up to the stop and search of his car and their conduct in carrying out that search show that they were subjectively motivated by an improper desire to find incriminating evidence against him.

## A

The government argues that, regardless what the officers' personal motivations were for searching Johnson's car, such motivations are simply not relevant to our Fourth Amendment inquiry. In most contexts, that is true. The Supreme Court has emphasized time and again that "[a]n action is 'reasonable' under the Fourth Amendment,

regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify the action." *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006) (internal quotation marks and alteration omitted); *see also Bond v. United States*, 529 U.S. 334, 338 n.2 (2000) ("[T]he subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment"); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("[W]e have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers . . . .").

However, in an opinion published after the district court's decision in this case, our court held that administrative searches conducted without individualized suspicion—such as drunk-driving checkpoints or vehicular inventory searches—are an exception to this general rule. *See United States v. Orozco*, 858 F.3d 1204, 1210–13 (9th Cir. 2017). In such circumstances, "actual motivations *do* matter." *Id.* at 1210 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011)); *see also United States v. Hellman*, 556 F.2d 442, 443–44 (9th Cir. 1977) (inventory search conducted "for an investigatory police motive" is invalid). In light of the "Supreme Court's express concern that programmatic searches not be used as a pretext," we held that a court must

> *inquir[e] into an officer's purpose* in conducting a stop or search without reasonable suspicion or probable cause, when such an intrusion is sought to be justified pursuant to the administrative search doctrine, and where the defendant has come forward with objective evidence to suggest that the intrusion was not made for the

purpose of enforcing the administrative inspection scheme.

*Orozco*, 858 F.3d at 1212–13 (emphasis added). Thus, an administrative search may be invalid where the officer's "subjective purpose was to find evidence of crime." *Id.* at 1213. However, the mere "presence of a criminal investigatory motive" or a "dual motive—one valid, and one impermissible—" does not render an administrative stop or search invalid; instead, we ask whether the challenged search or seizure "would . . . have occurred in the absence of an impermissible reason." *Id.*

We thus must determine whether Johnson has produced evidence that demonstrates the officers would not have searched and seized items from the car he was driving but for an impermissible motive.

B

Johnson first argues that the very manner of his arrest was a pretext to conduct the inventory search that followed; he argues that the officers orchestrated his traffic stop specifically so that they would be able to impound and to search the car he was driving. There is no doubt that, after stopping Johnson's car, the officers had an objectively sound reason to order the car towed: Johnson had stopped the car in the middle of the street, blocking the flow of traffic, and he was unable to put the officers in contact with the vehicle's owner so that it could be retrieved. *See Torres*, 828 F.3d at 1118 ("promoting public safety or the efficient flow of traffic" is a valid community caretaking purpose). Johnson argues, however, that the officers intentionally and illegitimately stopped him in a way that forced him to leave the car in such a position.

Specifically, Johnson challenges the officers' decision not to arrest him as he exited the residence they were staking out, but instead to wait and to stop his car in the street—and to do so by physically boxing him in. He adds that the officers then approached his car with guns drawn, making it even more unlikely that he would feel free to move his car to the side of the road. Although Johnson doubts the need for such maneuvers, the officers offered valid explanations for these actions, namely that the box-in technique was used to prevent flight and the timing and manner of Johnson's arrest were coordinated to minimize risks to officer safety. Moreover, even if the box-in tactic might have made it harder for Johnson to pull to the side, Johnson does not claim that it *prevented* him from doing so. Indeed, one of the arresting officers offered unrebutted testimony that there was enough space for Johnson to have pulled closer to the curb when he initially stopped the car.

Johnson's argument overlooks another critical fact that created the need to impound the car: Johnson could not provide the contact information for the car's owner. Johnson's inability to contact the owner could not have been orchestrated by the police, and without it, they may not have had reason to tow the car (as opposed to releasing it to its owner). In other words, the officers' chosen method of stopping Johnson would seem to be a poor way to orchestrate a scenario in which they would get to tow his car unless they could have somehow known ahead of time that the car's true owner would be unavailable to retrieve it. There is no evidence that the officers were aware of such fact when they chose to pull him over.

Altogether, Johnson has failed to show that the officers' decision to pull him over and to impound his car "would not

have occurred in the absence of an impermissible reason."
*Orozco*, 858 F.3d at 1213.

C

Johnson also argues that, even if the stop and impoundment of the car were valid, the officers improperly searched the car in an effort to find evidence of criminal activity. Johnson does not dispute that, before impounding the car, the officers were required by PPB policy to complete an inventory of the "personal property and contents of open containers" found within it and were authorized to seize the items found for safekeeping. *See* Portland City Code § 14C.10.030(C); Portland Police Bureau Policy 650.000. And indeed, we have previously held that PPB's inventory-search policies are valid for Fourth Amendment purposes, and that evidence found or seized in compliance with them may be admitted against a criminal defendant. *See United States v. Penn*, 233 F.3d 1111, 1115–16 (9th Cir. 2000). Johnson argues, however, that the officers in fact used this administrative inventory process not to identify and to safeguard his possessions, but instead merely as a pretext to gather evidence of crime.

Johnson raises a number of points in support of his argument, including that the officers' improper motivations are evidenced by their purported failure to comply with various provisions of PPB's inventory policy (for example by failing to list items in an appropriate manner and by failing to provide property receipts for all items seized). However, we need not consider the merits of those arguments—or whether any such violations of PPB policy would require suppression of the evidence found—because the officers themselves *explicitly admitted* that they seized items from the car in an effort to search for evidence of criminal activity.

First, the arrest report prepared by Officer Corona stated that he "believed it likely that the bags [seized from the trunk] contained evidence of restricted weapons and drug possession/sales," that he believed the seized cell phones may have been "used to facilitate criminal activity and evidence [may] be found stored on the phones," and that all of the seized items "were placed into evidence." The affidavit Officer Corona submitted in support of his application for a search warrant further confirmed that the items had been "seized pending further investigation," rather than for safekeeping. And at the suppression hearing, Officer Corona specifically testified that he seized the two bags from the car's trunk to hold onto them until he could secure a search warrant, because he "believe[d] that likely there was evidence of a crime inside the two bags."

Likewise, Multnomah County Deputy Adam Swail, who prepared the property receipt for the $7,100, testified that he assisted with taking that money "as evidence." He explained that his office held the money to help facilitate any civil forfeiture proceedings against it (presumably because it was believed to be the proceeds of a drug crime).

Indeed, the prosecution's own arguments before the district court emphasized the evidentiary motives behind these seizures. In both its brief in opposition to the motion to suppress and at the accompanying hearing, the government insisted that the money, the bags, and the cell phones were all seized from the car as "evidence" of a suspected crime. Even on appeal, the government continues to state that, during his inventory search, Officer Corona "located evidence of a crime," and that he seized the bags and placed them "in the evidence room" in order to apply for a search warrant. In short, the officers and the government's attorneys have made clear throughout this case that the items

taken from Johnson's car were seized and treated specifically as evidence of a crime—not as property held for safekeeping.

Under our circuit's law, a suspicionless inventory search does not permit officers to search or to seize items simply because they believe the items might be of evidentiary value. As explained above, the purpose of such a search must be unrelated to criminal investigation; it must function instead to secure and to protect an arrestee's property (and likewise to protect the police department against fraudulent claims of lost or stolen property). *See Wells*, 495 U.S. at 4; *Orozco*, 858 F.3d at 1210–13; *Hellman*, 556 F.2d at 443–44; *see also State v. Lovaina-Burmudez*, 303 P.3d 988, 991–95 (Or. Ct. App. 2013) (PPB inventory policy does not permit officers to seize items as evidence "for prosecution, rather than [as] personal property to be inventoried and secured for defendant"). Thus, the officers' statements directly admitting that they searched and seized items from Johnson's car specifically to gather evidence of a suspected crime (and not to further such permissible caretaking motives) are "sufficient to conclude that the warrantless search of the car was unreasonable." *Hellman*, 556 F.2d at 444; *see also Orozco*, 858 F.3d at 1213 ("[W]e have found pretext where the police officers admitted that their subjective purpose was to find evidence of crime.").[1]  In the

---

[1] The officers' statements as to their investigative motivations are further buttressed by comparing the items that were seized and logged on the property inventory form with those that were not. Indeed, there seems to be nothing connecting the items that were seized other than their apparent relevance to Johnson's later drug charges. For example, two bags from the trunk were seized—each of which contained incriminating evidence—while a third bag was left behind. Two cell phones and an accompanying battery pack were seized but other

face of such evidence, it is clear to us that the officers' decision to seize the money, bags, and cellphones from Johnson and his car would not have occurred without an improper motivation to gather evidence of crime.

In light of our decision in *Orozco*, we conclude that the officers' search and seizure of such evidence cannot be justified under the inventory-search doctrine. *See Orozco*, 858 F.3d at 1212–16. Because the government has not offered any justification for the seizure of such property *other than* the inventory-search doctrine, we conclude that the district court erred in denying Johnson's motion to suppress.[2] The evidence gathered from Johnson and his vehicle was inadmissible.[3] *See, e.g.*, *United States v. Feldman*, 788 F.2d 544, 554 (9th Cir. 1986) (evidence obtained from invalid inventory search requires suppression).

---

electronics (a GPS device, a DVD player, and a power station for tools) were not.

[2] Even if an inventory search itself may not be justified by a criminal investigative motive, officers may, of course, act on evidence of a crime that is discovered during a valid inventory search. In such circumstances, however, the officers' decision to seize the items as evidence must be supported by an appropriate showing of suspicion. *See, e.g.*, *Maryland v. Buie*, 494 U.S. 325, 330 (1990) (officer conducting lawful search may seize evidence "which was in plain view and which the officer had probable cause to believe was evidence of a crime"). The government has advanced no such argument here.

[3] Although the government does not argue harmless error, we conclude that the error was not harmless. The evidence seized from the search of Johnson and the car—in particular the cash and the evidence from the cellphones and the bags in the trunk—was central to the government's case against Johnson at trial.

### III

The district court's denial of Johnson's motion to suppress the evidence found on his person and in the car he was driving at the time of his arrest is **REVERSED**, his conviction and sentence are **VACATED**, and the case is **REMANDED** to the district court for further proceedings.[4]

---

O'SCANNLAIN, Circuit Judge, with whom BEA, Circuit Judge, joins, specially concurring:

I concur fully in the opinion of the court, which faithfully follows our circuit's precedent in *United States v. Orozco*, 858 F.3d 1204 (9th Cir. 2017). I write separately, however, because I believe such decision contradicts earlier Supreme Court precedent and that *Orozco* therefore ought to be reconsidered by our court.

### I

### A

The Supreme Court has repeatedly held that an officer's subjective motivations are irrelevant when determining whether a particular search or seizure is permissible under the Fourth Amendment; the pertinent question is whether the circumstances viewed *objectively* would justify the officer's conduct. *See, e.g.*, *Brigham City v. Stuart*, 547 U.S. 398, 404 (2006); *Bond v. United States*, 529 U.S. 334, 338 n.2 (2000); *Whren v. United States*, 517 U.S. 806, 813 (1996); *Graham*

---

[4] Because we vacate Johnson's conviction on the basis of the district court's failure to grant his motion to suppress, we do not consider his argument that his motion for a new trial should have been granted.

*v. Connor*, 490 U.S. 386, 397 (1989). There is some confusion as to how this doctrine applies in the context of administrative searches conducted without any individualized suspicion, such as checkpoints to inspect vehicles for drunk driving, or, as in this case, inventory searches to identify and to safeguard property found in a vehicle prior to impoundment. In such cases, the relevant administrative search program must actually further some valid, non-investigatory purpose; the program cannot merely be a "ruse for general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990). Thus, the court may conduct "an inquiry into the programmatic purpose in such contexts," to determine whether the underlying administrative inspection scheme itself is "driven by an impermissible purpose." *City of Indianapolis v. Edmond*, 531 U.S. 32, 46–47 (2000).

In *Orozco*, we held that our evaluation of the purposes behind an administrative inspection program must also consider the subjective motivations of the officers who executed the search. We wrote that even if the "*programmatic* purpose" of the administrative inspection scheme is valid, we must determine whether the individual "*officer's* purpose in conducting a stop or search" was indeed to "enforc[e] the administrative inspection scheme." *Orozco*, 858 F.3d at 1212–13 (emphasis added). Thus, we held, a court must ask "whether a stop made for an ostensibly legal reason is a pretext for what is, in reality, an impermissible reason." *Id.* at 1213 (internal quotation marks omitted). The court must determine whether the individual officer would have conducted the stop and search "in the absence of an impermissible reason" to do so. *Id.* (internal quotation marks omitted); *see also id.* (administrative search is invalid if the officer's "subjective purpose was to find evidence of crime").

B

The problem, however, is that the Supreme Court has explicitly—and unanimously—rejected the approach we adopted in *Orozco*. In *Brigham City v. Stuart*—a case that predates *Orozco* by more than a decade—the Supreme Court held that an officer's subjective motivations cannot invalidate an otherwise objectively valid entry into a home under the "exigent circumstances" exception to the Fourth Amendment's warrant requirement.  547 U.S. at 404. Specifically, the Court upheld police officers' warrantless entry into a home where "they ha[d] an objectively reasonable basis for believing that an occupant is seriously injured or imminently threatened with such injury."  *Id.* at 400.  The respondents argued that the officers' entry was invalid because, even if there were an objective basis to conclude there was an emergency inside the home, in reality, "the officers were more interested in making arrests than quelling violence."  *Id.* at 404.  The Court rejected such argument and reiterated that it has "repeatedly rejected" the notion that an "officer's state of mind" has any relevance to the Fourth Amendment inquiry.  *Id.* (citing cases).

Critically, the Court in *Brigham City* then addressed the unique circumstance of "programmatic searches conducted without individualized suspicion"—*i.e.*, the type of search at issue in *Orozco* and in this case.  *Id.* at 405.  The Court acknowledged that, in such contexts, "'an inquiry into *programmatic* purpose' is sometimes appropriate," but explained that "this inquiry is directed at ensuring that the purpose behind the *program* is not 'ultimately indistinguishable from the general interest in crime control.'"  *Id.* (emphasis in original) (quoting *Edmond*, 531 U.S. at 46).  The Court underscored that such an inquiry "*has nothing to do with discerning what is in the mind of the*

*individual officer conducting the search*." *Id.* (emphasis added); *see also Edmond*, 531 U.S. at 48 ("[W]e caution that the purpose inquiry in this context is to be conducted *only at the programmatic level* and is *not an invitation to probe the minds of individual officers* acting at the scene." (emphasis added)). In short, the Court in *Brigham City* clarified that an individual officer's "subjective motivation is irrelevant" to the Fourth Amendment, *even when* the programmatic motivation behind an administrative inspection scheme might matter. 547 U.S. at 404; *see also United States v. McKinnon*, 681 F.3d 203, 210 (5th Cir. 2012) ("Although [the officer] may have had an ulterior motive to search the vehicle, the inventory search was [objectively] reasonable, and thus, remained valid under the Fourth Amendment."); *Laidley v. City & Cty. of Denver*, 477 F. App'x 522, 524 (10th Cir. 2012) (Gorsuch, J.) ("[Laidley] claims that the officers involved weren't *motivated* by community caretaking concerns [when they towed his car] . . . . But this is insufficient to establish a Fourth Amendment violation. . . . 'The officer's subjective motivation is irrelevant.'" (quoting *Brigham City*, 547 U.S. at 404)).

II

I do not see how one can reconcile the Supreme Court's admonition in *Brigham City* that our inquiry into the programmatic purpose behind an administrative search "has nothing to do with discerning what is in the mind of the individual officer conducting the search," 547 U.S. at 405, with *Orozco*'s holding that such an inquiry "necessarily requires an inquiry into [the] officer's purpose in conducting" the search, 858 F.3d at 1212. Unfortunately, the court in *Orozco* did not even cite, let alone attempt to distinguish, *Brigham City*. Instead, the court in *Orozco* simply offered its own gloss on the Supreme Court's

discussion of programmatic purposes in earlier cases, including *Indianapolis v. Edmond* and *Florida v. Wells*—the exact cases that the Court later clarified in *Brigham City*.[1] *See generally* 547 U.S. at 405. Judge Paez argues that *Orozco* "examined a long line of Supreme Court cases" and "meticulously [laid] out" its reasons for interpreting those cases differently than the Court itself did in *Brigham City*. Paez Concurrence at 25 (internal quotation marks omitted). Perhaps so. But we, as an inferior court, are not at liberty to disagree with the Supreme Court's own interpretation of its precedent.

Judge Paez's further insinuation that the "vast majority of our sister circuits" would find *Orozco* to be consistent with *Brigham City* is unfounded. Paez Concurrence at 28–29. At least three circuits—the First, Fifth, and Tenth—have

---

[1] Centrally, the court in *Orozco* sidestepped the Supreme Court's caution in *Indianapolis v. Edmond* that "the purpose inquiry in [the administrative search] context is to be conducted only at the programmatic level and is not an invitation to probe the minds of individual officers acting at the scene." 531 U.S. at 48. The court in *Orozco* dodged the seemingly obvious implications of this statement by observing that the search in *Edmond* was conducted pursuant to an *invalid* administrative inspection scheme that was not supported by an appropriate programmatic purpose. *See Orozco*, 858 F.3d at 1212. The court wrote that *Edmond* thus "had no occasion to address directly the purpose of law enforcement officers who act to enforce a *valid* administrative scheme," and concluded that *Edmond*'s rejection of an individual-purpose inquiry did not apply where an officer's subjective motivation arguably invalidated a search conducted under an otherwise permissible scheme. *See id.* This already thin distinction falls apart in the context of *Brigham City*. There, the Supreme Court indeed rejected the argument that an individual officer's improper motivation might invalidate an otherwise objectively valid warrantless search, citing *Edmond* in the process. *See* 547 U.S. at 404–05.

rejected *Orozco*'s line of analysis.[2]  *See, e.g.*, *McKinnon*, 681 F.3d at 210; *Laidley*, 477 F. App'x at 524; *United States*

---

[2] Curiously enough, Judge Paez cites a case decided nearly a decade before *Brigham City* to suggest that the Tenth Circuit agrees with *Orozco*.  *See* Paez Concurrence at 29 (citing *United States v. Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997)).  First, even in that case, the court held that the evidence found during the supposedly invalid inventory search (which had been conducted by an officer searching for evidence of crime) could *still* be admitted against the defendant, because a hypothetical inventory search (i.e., one conducted by a hypothetical officer acting for administrative purposes) would have found the evidence anyway.  107 F.3d at 773–74.  More to the point, at least one panel of the Tenth Circuit—in an unpublished decision written by then-Judge Gorsuch—has since held that the Supreme Court's opinion in *Brigham City* rejects an *Orozco*-like analysis in the first place.  *See Laidley*, 477 F. App'x at 524

*United States v. Martinez*, 512 F.3d 1268, 1274 (10th Cir. 2008), which held that a hypothetical inventory search may not "transgress[] its administrative purposes" hardly shows—as Judge Paez suggests, Paez Concurrence at 29 n.4—that *Laidley* contravenes controlling Tenth Circuit law.  In context, that passing quotation says nothing about whether an *individual* officer's subjective motivation could invalidate an inventory search otherwise conducted under a valid inventory search program (i.e., one supported by a permissible programmatic purpose).  Indeed, in the very next sentence of its opinion the Tenth Circuit explained "[i]n other words" that under *Florida v. Wells*, 495 U.S. at 4, an inventory search cannot be a "ruse for general rummaging."  This inquiry from *Wells* is *exactly* what the Court in *Brigham City* limited only to an inspection of programmatic—and not individual— motivations.  *See* 547 U.S. at 406 (quoting *Wells*, 495 U.S. at 4).

Further, it makes no sense that the court in *Martinez* would have been addressing a searching officer's subjective motivation; that case once again considered the *hypothetical* application of an inventory search policy to consider whether certain evidence would have inevitably been discovered *if such a search were conducted*.  512 F.3d at 1274.  Because such a search was not *actually* conducted, there was no searching officer whose motives could have been questioned.  Worse

*v. Hawkins*, 279 F.3d 83, 86 (1st Cir. 2002) ("Appellant also challenges the search saying that the inventory was clearly a 'ruse' to search for drugs. Regardless of what appellant suggests, the law is clear. The subjective intent of the officers is not relevant so long as they conduct a search according to a standardized inventory policy."). Prior to *Orozco*, our *own court* had as well. *See United States v. McCarty*, 648 F.3d 820, 833 (9th Cir. 2011) ("[In administrative-search cases,] consideration of the government actor's actual motivation has been limited to an inquiry into the *programmatic* purposes motivating the search. . . . [T]his inquiry 'is *not* an invitation to probe the minds of individual officers acting at the scene.' . . . '[T]he subjective motive of the individual conducting the search will not invalidate the search.'" (quoting *Edmond*, 531 U.S. at 48; *United States v. Bulacan*, 156 F.3d 963, 967 (9th Cir. 1993))); *United States v. Tsai*, 282 F.3d 690, 695 (9th Cir. 2002) (holding that *Edmond* provides for an inquiry into purpose and scope of the overall administrative search "scheme," not an "inquiry into the searcher's motivation").[3]

---

still, like in *Haro-Salcedo*, in *Martinez* the officers actually did search the car based on their suspicion of criminal activity. *See id.* at 1271. Yet, the court held that even if the officers' suspicion-based search were invalid, the car *could hypothetically* have been searched anyway pursuant to the applicable inventory policy and thus upheld the trial court's refusal to suppress the evidence found inside. *See id.* at 1274. This seems hardly a case to show that subjective officer motivations matter.

[3] *Orozco* parted ways with our prior cases in much the same way it eluded the Supreme Court's guidance in *Brigham City*. Before *Orozco*, in *United States v. McCarty* we had expressly recognized that the Supreme Court's decision in *Edmond* permits only an inquiry into programmatic (and not individual) motivations. *See* 648 F.3d at 832–33. The panel in *Orozco* sidestepped *McCarty* by itself "analyz[ing]"

Judge Paez asserts that seven other circuits—the Second, Third, Fourth, Sixth, Eighth, Eleventh, and D.C. Circuits—agree with *Orozco*. *See* Paez Concurrence at 27–30. First, the Second Circuit's purported agreement is hardly as clear as Judge Paez would suggest. *See United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) ("[I]f a search of an impounded car for inventory purposes is conducted under standardized procedures, that search falls under the inventory exception . . . notwithstanding a police expectation that the search will reveal criminal evidence. If good faith is a prerequisite of an inventory search, the expectation and motivation to find criminal evidence do not constitute bad faith."). More to the point, none of the cases cited by Judge Paez actually addresses whether *Orozco*'s line of reasoning is in conflict with what the Court said in *Brigham City*. Three of the cases precede *Brigham City* by years. *See United States v. Rowland*, 341 F.3d 774 (8th Cir. 2003); *United States v. Khoury*, 901 F.2d 948 (11th Cir. 1990); *United States v. Whitfield*, 629 F.2d 136 (D.C. Cir. 1980). In fact, Judge Paez identifies only one case that even cites *Brigham City*, and it does so on a different point of law. *See United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). Indeed, that case hardly bears on the question before us at all. In it, the Sixth Circuit simply repeated that inventory searches cannot be a pretext for criminal investigation but did not address whether that means an

---

*Edmond* and reaching a different conclusion about the extent of *Edmond*'s holding. *Orozco*, 858 F.3d at 1216. The court wrote that if *McCarty* had provided a conflicting interpretation of *Edmond*, "that view would beg the question" at hand. *Id.* In other words, the court in *Orozco* simply determined that any contrary statement of the law in *McCarty* must have been wrongly decided. Of course, a three-judge panel of our court cannot decline to follow an earlier Ninth Circuit precedent simply because it disagrees with its analysis. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

officer's subjective motivation may invalidate a search conducted under an objectively sound administrative program. *See generally id.* at 232–34.

In short, the cases cited by Judge Paez say very little about whether our decision in *Orozco* is misguided in light of the Supreme Court's admonition in *Brigham City* not to engage in exactly the sort of individual-motivation inquiry that *Orozco* allows. They certainly do not show that the "vast majority" of circuits would agree that we should not revisit such decision now.

### III

As law of the circuit, *Orozco* controls our decision in this case.[4]   However, I hope that we might reconsider that decision en banc, in light of the directly contrary views expressed earlier by the Supreme Court in *Brigham City*.

---

[4] Even though it is irreconcilable with the Supreme Court's decision in *Brigham City*, we are obligated to follow *Orozco* because it was decided well after *Brigham City*. *Cf. United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017) ("[A] three-judge panel is not allowed to disregard a prior circuit precedent, but rather must follow it unless or until change comes from a higher authority."); *Miller*, 335 F.3d at 899–900 (three-judge panel may reject prior opinion of this court where it is clearly irreconcilable with "*intervening* higher authority" (emphasis added)).

PAEZ, Circuit Judge, specially concurring:

I concur in the court's opinion without reservation. The opinion is consistent with the current state of the law on inventory searches, not just in our circuit, but in the Supreme Court and the vast majority of our sister circuits as well. I therefore disagree with my colleagues' separate concurrence that our decision in *United States v. Orozco*, 858 F.3d 1204 (9th Cir. 2017), should be revisited in light of the Supreme Court's decision in *Brigham City v. Stuart*, 547 U.S. 398 (2006).

True to the Supreme Court's past precedent, *Orozco* concluded that the administrative search doctrine permits an inquiry into "an officer's subjective purpose" when there is "objective evidence to suggest that the intrusion was not made for the purpose of enforcing the administrative inspection scheme." *Orozco*, 858 F.3d at 1212–13. In so concluding, *Orozco* examined a "long line of Supreme Court cases" evidencing the Supreme Court's consistent "concern for pretext, even where searches or seizures are undertaken by those charged with enforcing a valid administrative scheme." *Id.* at 1212. Our decision in *Orozco* meticulously lays out this history in full, and I see no need to repeat it here. *See id.* at 1210–12. I note, however, that the Supreme Court has repeatedly emphasized that "reasonable police regulations relating to inventory procedures *administered in good faith* satisfy the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 374 (1987) (emphasis added); *see also New York v. Burger*, 482 U.S. 691, 716 n.27 (1987) (concluding both that the administrative scheme itself was not enacted for the purpose of effectuating investigative searches *and* that there was "no reason to believe that the instant inspection was *actually* a 'pretext' for obtaining evidence of respondent's violation of the penal laws"

(emphasis added)).  Thus, a Fourth Amendment violation based on an administrative search requires "showing that the police, who were following standardized procedures, acted in bad faith or for the sole purpose of investigation." *Bertine*, 479 U.S. at 372.  And what is bad faith if not a subjective motive-based inquiry?  *See Bad Faith*, *Black's Law Dictionary* (10th ed. 2014) (defining "bad faith" to mean "[d]ishonesty of belief, purpose, or motive").

My colleagues suggest in their concurrence that despite this case law, *Orozco* is not faithful to the Supreme Court's treatment of administrative searches.  They rely on the Supreme Court's decision in *Brigham City* for the proposition that the Court has explicitly disavowed any inquiry into an officer's subjective motivations even in the context of an administrative search.  I disagree.  The Supreme Court's decision in *Brigham City* was limited to the "exigent circumstances" exception to the Fourth Amendment's warrant requirement.  Although the Court briefly suggested in *Brigham City* that a programmatic inquiry "has nothing to do with discerning what is in the mind of the individual officer conducting the search," 547 U.S. at 405, it did so based on its prior decision in *City of Indianapolis v. Edmond*, 531 U.S. 32 (2000)—a case we addressed in *Orozco*.  There, we properly construed *Edmond*'s similar characterization of programmatic inquiries as one limited to "the context of an invalid programmatic scheme."  *Orozco*, 858 F.3d at 1212.  More importantly, in the years following *Brigham City*, the Supreme Court has continued to explain that it has "never held, outside limited contexts such as an 'inventory search or administrative inspection, that an officer's *motive* invalidates objectively justifiable behavior under the Fourth Amendment.'"  *Kentucky v. King*, 563 U.S. 452, 464 (2011) (emphasis added) (internal alteration omitted) (quoting

*Whren v. United States*, 517 U.S. 806, 812 (1996)); *see also Fernandez v. California*, 134 S. Ct. 1126, 1134 (2014) (quoting *King*, 563 U.S. at 464).

Consistent with the Supreme Court's instructions on this point, *Orozco* requires that we first assess whether there is "objective evidence supporting a charge of pretext" for an alleged administrative search.[1]  858 F.3d at 1213 (internal quotation marks omitted).  If there is, we may then look to evidence of the "officer's subjective purpose."[2]  *Id.*  This approach is hardly unique.  The Eighth Circuit advanced the same interpretation of Supreme Court precedent in *United States v. Rowland*, 341 F.3d 774 (8th Cir. 2003).  There, the court concluded that the officers' failure to follow "standardized procedures . . . coupled with the fact the officers disregarded items without evidentiary value"

---

[1] Here, as the opinion notes, the record contains both objective indicia of the officer's pretextual motives as well as admissions from the officers themselves.  First, the PPB officers selectively seized items from the car during the alleged inventory search.  Their incomplete inventory left behind a bag of clothes, a GPS device, a DVD player, and a power station for tools.  Second, the seized items were placed into evidence as opposed to property.  Third, the seized $7,100 in funds were forwarded to another office for potential civil forfeiture proceedings.

[2] This is also consistent with our earlier decision in *United States v. McCarty*, 648 F.3d 820 (9th Cir. 2011).  In *McCarty*, we noted that as long as the initial inventory search was undertaken pursuant to a legitimate administrative search scheme and the officer operated only within the scope of that scheme, the presence of a "second, subjective motive" would not nullify the fruits of that search.  648 F.3d at 834–35.  In *Orozco*, there was no administrative search motive.  As we observed, "the *only* purpose of the stop of Orozco's truck was to investigate criminal activity," 858 F.3d at 1216 (emphasis added), and the search would not have taken place at all absent the impermissible motive.  *Orozco* and *McCarty* address two different circumstances involving an inventory search.

suggested that the inventory search was pretextual and therefore invalid. *Id.* at 782; *see also United States v. Taylor*, 636 F.3d 461, 465 (8th Cir. 2011) (concluding the inventory search was invalid because the searching officer's testimony demonstrated that the search was "merely a pretext for an investigatory search"). The Fourth Circuit has similarly concluded that a defendant "may only succeed in challenging the search of the bags . . . by showing that [the officer's] search was motivated by 'an investigatory police motive.'" *United States v. Banks*, 482 F.3d 733, 741 (4th Cir. 2007) (quoting *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976)); *see also United States v. Matthews*, 591 F.3d 230, 235 (4th Cir. 2009) ("For the inventory search exception to apply, the search must have 'been conducted according to standardized criteria,' such as a uniform police department policy, *Bertine*, 479 U.S. at 374 n.6, and performed in good faith, *Banks*, 482 F.3d at 739." (internal alteration omitted)).

In fact, the vast majority[3] of our sister circuits have concluded that under Supreme Court precedent, a police

---

[3] Judge O'Scannlain's concurrence takes issue with this description as "unfounded." O'Scannlain Con. at 20. By my count, however, at least eight of our eleven sister circuits have issued decisions consistent with our approach in *Orozco*. In support of their contention, my colleagues reference the First and Fifth Circuits and an unpublished decision from the Tenth Circuit. O'Scannlain Con. at 20–22. The First Circuit's opinion in *United States v. Hawkins*, 279 F.3d 83 (1st Cir. 2002), however, is not inconsistent with *Orozco*. *Id.* at 86 ("The subjective intent of the officers is not relevant *so long as* they conduct a search according to a standardized inventory policy." (emphasis added)); *see also United States v. Acosta-Colon*, 741 F.3d 179, 207 (1st Cir. 2013) ("[I]f the arrests are legal, then the police can take the car back to the barrack and search it pursuant to standard inventory procedures— provided also that they do not 'act in bad faith or for the sole purpose of investigation.'" (internal alterations omitted) (quoting *Bertine*, 479 U.S.

officer's subjective motive is relevant when assessing the constitutionality of an administrative search. *See, e.g.*, *United States v. Mundy*, 621 F.3d 283, 293 (3d Cir. 2010) (concluding that there was no evidence demonstrating "that the officers conducted the inventory search as pretext or in bad faith"); *United States v. Lopez*, 547 F.3d 364, 370 (2d Cir. 2008) ("Our court has noted that a consideration in determining the reasonableness of an inventory search is whether the officials conducting the search acted in good faith pursuant to standardized criteria or established routine." (internal quotation marks and alterations omitted)); *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007) ("[O]fficers must conduct a permissible inventory search in good faith, not as a pretext for criminal investigation."); *United States v. Haro-Salcedo*, 107 F.3d 769, 773 (10th Cir. 1997) (concluding that a search "conducted for investigatory rather than administrative purposes[] could not properly be characterized as an inventory search");[4] *United States v. Khoury*, 901 F.2d 948, 959 (11th Cir. 1990) ("The inventory

---

at 372)). Nor, as I explain later, may an unpublished decision supersede a published opinion arriving at the opposite conclusion.

[4] Judge O'Scannlain's concurrence also takes issue with *United States v. Haro-Salcedo*, 107 F.3d 769 (10th Cir. 1997), and suggests that my reliance on it is "curious[]." O'Scannlain Con. at 21 n.2. I find it more curious that my colleagues rely on an unpublished decision to reject the legal conclusions of a precedential opinion. Unpublished decisions in the Tenth Circuit are "not binding precedent." *United States v. Goff*, 314 F.3d 1248, 1250 (10th Cir. 2003). Accordingly, the Tenth Circuit must follow its published opinions over unpublished decisions. *See Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1161 n.3 (10th Cir. 2003). Moreover, a Tenth Circuit post-*Brigham City* decision reiterates that even for inevitable discovery purposes, the government may only rely on a hypothetical inventory search if "such a search would not have transgressed *its administrative purposes*." *United States v. Martinez*, 512 F.3d 1268, 1274 (10th Cir. 2008) (emphasis added).

search, when conducted according to standardized routine in furtherance of the legitimate goals of the inventory, is an exception to the warrant requirement."); *United States v. Whitfield*, 629 F.2d 136, 139 n.5 (D.C. Cir. 1980) (concluding the inventory search was invalid because "the police stopped the car solely with an investigatory purpose in mind"). *But see United States v. McKinnon*, 681 F.3d 203, 210 (5th Cir. 2012) ("The reasonableness inquiry under the Fourth Amendment is an objective one, wholly divorced from the subjective beliefs of police officers." (quoting *United States v. Castro*, 166 F.3d 728, 734 (5th Cir. 1999) (en banc) (per curiam)).

That these cases do not, for the most part, mention *Brigham City* only supports my point. A lone paragraph in *Brigham City* cannot supplant the Supreme Court's lengthy history of examining officer motives in the context of administrative searches. Indeed, the Supreme Court itself has continued to assert post-*Brigham City* the validity of such a motive-based inquiry. *See King*, 563 U.S. at 464 (explaining that an officer's motive for an inventory search can invalidate objectively justifiable behavior under the Fourth Amendment).

I see no need to revisit our decision in *Orozco*.