# FILED

NOT FOR PUBLICATION

OCT 23 2018

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LAMONTE DIONDRE GASTON, AKA
Crazy L,

Defendant-Appellant.

No.    17-50130

D.C. No. 3:16-cr-01249-H-1

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted August 8, 2018
Pasadena, California

Before:  GRABER, WARDLAW, and CHRISTEN, Circuit Judges.

Lamonte Gaston, Sr. (Gaston) was convicted of being a felon in possession

of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

Gaston appeals the district court's order denying his motion to suppress evidence

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

discovered during a warrantless search of his vehicle.[1]  We have jurisdiction under

28 U.S.C. § 1291, and we affirm.

The district court's findings of fact at a suppression hearing are reviewed for

clear error.  *United States v. Feldman*, 788 F.2d 544, 550 (9th Cir. 1986).

1.      A reasonable inventory search is "a well-defined exception to the

warrant requirement" because "[t]he policies behind the warrant requirement are

not implicated in an inventory search."  *Colorado v. Bertine*, 479 U.S. 367, 371

(1987).  "[A]n inventory search must conform to a standardized and established

local procedure."  *United States v. Bowhay*, 992 F.2d 229, 230 (9th Cir. 1993).

Inventory search procedures can be formed by "standardized criteria *or* established

routine."  *Florida v. Wells*, 495 U.S. 1, 4 (1990) (emphasis added) (citation

omitted).

In this case, officers from the San Diego Police Department ("SDPD")

arrested Gaston in his vehicle pursuant to a valid misdemeanor arrest warrant and

then impounded the car he had been driving.  SDPD policy provides that

"[p]ersonnel ordering a tow shall conduct an inventory."  Section (a) of the policy

authorizes officers to search "all areas of the vehicle where valuables are likely to

---

[1]      The parties are familiar with the facts so we recite only those
necessary to resolve Gaston's appeal.

be stored, including any containers within the vehicle." While conducting an inventory search of Gaston's car, officers opened the trunk and found a lock box. When the officers asked Gaston about its contents, he responded that "there was a whole bag of jewelry inside."

At an evidentiary hearing, SDPD officers testified that they routinely open a locked container if it is "reasonably available to be opened at the scene" and "as long as they're not damaging the box or breaking it." The district court found, based in part on the officers' testimony, that the SDPD had a routine practice of opening locked containers if they can be readily opened during an inventory search. This finding was not clearly erroneous and the routine practice does not conflict with the SDPD's written policy. Accordingly, the district court's finding that the search was conducted within the framework of sufficiently established policy and practice was not clearly erroneous. *See Wells*, 495 U.S. at 4.

2. As the dissent rightly observes, the facts suggest that one of the searching officers' motives was an ongoing criminal investigation. Although "an inventory search is invalid if it was a pretext for an investigative search," a search conducted with the dual motives of inventory and investigation is permissible. *Bowhay*, 992 F.2d at 231. The district court found that the officers were motivated, at least in part, by policy requiring an inventory search for valuable items. On the

3

record before us, we cannot say that this finding was clearly erroneous.

SDPD policy requires officers to search areas where "valuable items" are likely to be kept during an inventory search. The inventorying officers testified that they were "looking for valuables" when they opened the lock box because "usually people keep valuable stuff in lock boxes." Notably, the officers' actions were consistent with Gaston's statement that the lock box contained jewelry. The officers "wanted to make sure that if there was a whole bag of jewelry in there that it needs to be itemized and documented prior to any impounds."

**AFFIRMED**.

*United States v. Gaston*, No. 17-50130

WARDLAW, Circuit Judge, dissenting:

I respectfully dissent. The district court clearly erred by finding that the officers' search of the car was "reasonably designed to produce an inventory." Most significantly, the officers did not in fact produce an "inventory." There is nothing in the record that even remotely resembles an "inventory," a "caretaking procedure[] . . . to itemize the property to be held by the police." *South Dakota v. Opperman*, 428 U.S. 364, 370–71 (1976) (internal quotation marks and citation omitted).

By contrast, as the officers' incident reports reveal, the search took place as part of an "investigation." Written department inventory policy requires officers to list all "items of value" in the vehicle report. The officers here failed to do so. The vehicle report cross-references the arrest report, which describes the lock box and its contents under the section heading for "investigation." Moreover, the officers neglected to report any of the other items of value they found while searching Gaston's car, including a Wii video game player, a DVD player, a leather jacket, and tools. And under the heading for "related reports," where one would expect officers to account for inventory, the arrest report simply reads: "NONE."

By way of explanation, an officer testified that the omission of other items found in the car from the vehicle report signified that they "didn't have value."

1

The officer's post hoc rationalization strains credulity.  For one, the officer had, seconds earlier, testified that jewelry, cash, and electronics are among the types of valuables officers would have listed on a vehicle report.  But a DVD player and Wii video game player are unequivocally "electronics."  For another, the same officer also testified that they decided to open the lock box because when asked about its contents, Gaston answered that "there was a whole bag of jewelry inside," and, therefore, the officers wanted to ensure they inventoried the jewelry before impounding the car.  Video footage of the incident, however, proves otherwise.  It shows that the officers did not inquire further as to the type of jewelry in the lock box.  Instead, one officer shook the box and handed it to another officer, who said, "Sounds like there's something heavy like a gun.  Come on, Guy, tell me."  The officers' "inventory" search was but "a ruse for general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

We provide an exception for inventory searches because unlike investigative searches, inventory searches serve to protect the owner's property while in police custody, guard the police from danger, and insure the police against claims of lost, stolen, or vandalized property. *Opperman*, 428 U.S. at 369.  Here, the officers knew Gaston was homeless.  It was therefore much more probable that the electronics and other valuable items in Gaston's car that the officers declared "didn't have value" were in fact the kind of valuables the officers should have

2

inventoried to protect them against property claims. By failing to safeguard Gaston's valuables, then, the officers' actions undermined a key purpose for permitting warrantless inventory searches in the first place.

The panel majority misstates the district court's finding. The district court did *not* find dual motives for the search. The district court instead ruled that "the totality of the circumstances show that it was an inventory search." The panel majority's reliance on *United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993), is thus misplaced. The district court clearly erred in finding that the officers acted here solely to conduct an inventory search. *See United States v. Johnson*, 889 F.3d 1120, 1126–27 (9th Cir. 2018). I would therefore reverse the district court's denial of the motion to suppress.